IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION


- - - - - - - - - - - - - - - - X
MAHARISHI FOUNDATION USA, INC., :
                         :
     Plaintiff,         :
                         :
vs.                  :  Case No. 4:11-cv-00562
                         :
THE VEDA CENTER, LLC;     :
THOMAS KNOLES; and THE     :
MEDITATION HOUSE, LLC,    :   HEARING TRANSCRIPT
                         :
     Defendants. :
- - - - - - - - - - - - - - - - X


                      Courtroom, Fourth Floor
                      U.S. Courthouse
                      123 East Walnut Street
                      Des Moines, Iowa
                      Friday, May 10, 2013
                      9:00 a.m.


BEFORE:  THE HONORABLE JOHN A. JARVEY, Judge.


                        - - -


                KELLI M. MULCAHY, CSR, RMR, CRR
                  United States Courthouse
                  123 East Walnut Street
                 Des Moines, Iowa 50309

APPEARANCES:

For the Plaintiff:          MARK L. ZAIGER, ESQ.
                            JASON R. SYTSMA, ESQ.
                            Shuttleworth & Ingersoll
                            115 Third Street SE
                            Suite 500
                            Cedar Rapids, Iowa  52401

For the Defendants:        ERIC M. BRAUN, ESQ.
                            EMB Legal Pty. Ltd.
                            Level 34, 50 Bridge Street
                            Sydney, NSW, Australia

                            TODD A. STROTHER, ESQ.
                            Bradshaw, Fowler,
                             Proctor & Fairgrave, P.C.
                            801 Grand Avenue, Suite 3700
                            Des Moines, Iowa  50309-2727

1              P R O C E E D I N G S

2              (In open court.)

3              THE COURT:  Please be seated.

4              We are here in the matter of Maharishi Foundation USA,

5    Incorporated, versus The Veda Center, LLC; Thomas Knoles and The

6    Meditation House.  It's Civil Case 4:11-cv-562.  We're here for

7    a hearing on the defendants' motion to dismiss.

8              The plaintiff is represented by Mark Zaiger and Jason

9    Sytsma.  The defendants are represented by Eric Braun and Todd

10   Strother.

11             It's your motion.  You may proceed.

12             MR. BRAUN:  Thank you, Your Honor.

13             Your Honor, may it please the Court.  By way of

14   introduction, the defendants would note that, as stated in this

15   Court's order, most recent order, which is our point of

16   departure for this hearing, the complaint must present a short

17   and plain statement of the claim showing the pleader's entitled

18   to relief, go beyond conclusory or formulaic statements, and,

19   importantly, contain sufficient factual matter, accepted as

20   true, to state a claim for relief is plausible on its face.

21             Now, as we understood it, the Court found that the

22   prior complaint did not meet these standards and in particular

23   that it did not allow the Court to, quote, weed out claims on

24   statute of limitation grounds or claims that failed to meet the

25   plausibility standard of the Twombly case.

1          Now, overall and by way of introduction, Your Honor,

2     the defendants' position is that the second amended complaint,

3     with some minor exceptions that we will identify, fails to cure

4     these deficiencies.

5          The second amended complaint is a long and repetitive

6     document, failing to provide material allegations of fact

7     sufficient to meet the plausibility standard, and in many

8     instances still relies on conclusory allegations devoid of

9     necessary specifics as to time, place, or persons engaged in the

10    conduct.  Such specifics are required to give notice to

11    Defendants of the claims against each of them separately under

12    Rule 8 of the federal rules.

13         Further, in our view, in our respectful submission,

14    such specificity is particularly appropriate and arguably

15    required in this matter under the heightened pleading standards

16    of Federal Rule of Civil Procedure 9, and that is because of the

17    plaintiff's claims generally that the defendants, all of them,

18    have acted with a specific intent to deceive consumers.  And

19    that's at paragraph 95 of the new complaint.  Not just an intent

20    to confuse them, but to deceive.

21         Now, we claim that all claims in the new complaint

22    must be dismissed except for the following, which, in the

23    context of the complaint, are quite minor.  The claims as to

24    which we do not seek dismissal are the allegations of trademark

25    law violations by Mr. Knoles prior to 2005 relating to his use

1  of the terms, quote, Transcendental Meditation, quote, on his

2  Web site and otherwise to refer to meditation taught by him.

3      The only other allegations, Your Honor, which we say

4  could survive are the allegations of false advertising by

5  Mr. Knoles and the Veda Center relating to statements in Exhibit

6  G concerning the very limited matter, Your Honor, of the nature

7  or extent of Mr. Knoles' relationship with the Maharishi Mahesh

8  Yogi and when Mr. Knoles became, quote, an acclaimed teacher of

9  the meditation.  And those claims arise based on Exhibit G and

10  at paragraphs 62-64 of the complaint.

11      Now, for convenience, Your Honor, I'll refer to the

12  historical, now deceased, figure Maharishi Mahesh Yogi by the

13  short term Maharishi.

14      By way of overview, one of the reasons why the claims

15  must otherwise be dismissed is that the nature of the claims is

16  fundamentally flawed.  The plaintiff's claims are sweeping in

17  their scope.  They go far beyond the boundaries of trademark or

18  contract law and would impose a monopoly on the teaching and

19  promotion of any type of meditation said to be the same as or

20  derived or based on the type of meditation taught by the

21  Maharishi.

22      Now, the way this is firstly shown is by the prayer

23  for relief in the complaint, Your Honor, and that starts at page

24  51.  Subparagraph a says the defendants or any person in active

25  concert with them should be enjoined.  The first several

1 paragraphs refer to enjoining false advertising.

2         Subparagraph 4 refers to enjoining them from using in

3 advertising and promotion the Transcendental Meditation

4 trademark or any colorable imitation thereof.  And that reveals

5 the nature of these claims also as reflected in their substance,

6 which is trademark law prohibits any use whatsoever of any kind

7 in any way of this trademark, whether it's a simple product

8 comparison identifying both brands as separate providers under

9 different names, whether in a disclaimer or otherwise.  And in

10 our respectful submission, Your Honor, trademark law imposes no

11 such prohibitions on these defendants or any other competitor.

12         Now, the injunctive relief sought is also, in

13 subparagraph 6, from these defendants expressly or impliedly

14 representing themselves to be in any way affiliated with the

15 Maharishi.  Now, again, Your Honor, trademark law could not

16 possibly prohibit these defendants from making what is

17 admittedly a correct reference to the fact that Mr. Knoles is

18 associated--has an association with the Maharishi Mahesh Yogi.

19         It is accepted in the, quote-unquote, contract

20 allegations and shown in Exhibit C that in 1972 Mr. Knoles, and

21 this is also referred to in Exhibit E to the complaint,

22 participated in a 12-week training course in which he was

23 personally taught by Maharishi how to teach this type of

24 meditation.

25         Now, according to Plaintiff, despite that undisputed

1  fact, he could never even refer to it, nor could other

2  defendants who--

3          THE COURT:  Well, in the complaint they said he

4  wasn't.  They said he was taught by somebody named Cranston and

5  it's all a big lie, and we take it as true for the purposes of a

6  motion to dismiss.

7          MR. BRAUN:  With respect, Your Honor, there's a

8  distinction to be drawn here.  What is said in the complaint is

9  that when Mr. Knoles himself first learned to practice this

10  Transcendental Meditation, he was taught by Robert Cranston.

11  And I accept that that must be taken as true.

12          But that's an entirely separate matter from the

13  12-week course in which Mr. Knoles was taught to be a teacher of

14  this type of meditation to other persons.  Now, it is that

15  teaching by Mr. Knoles that is the relevant and undisputed

16  association in this case based on Exhibit C.  But it is a--it's

17  a distinction which is not very clear to one who hasn't been

18  buried in this case, Your Honor, but I think it is a clear and

19  relevant distinction.

20          Now, Plaintiffs also seek an account of profits,

21  treble damages and for Knoles to pay punitive damages, and

22  that's based on the alleged specific intent to deceive.

23          Now, the relief also sought is delivery up of all

24  materials containing the trademark.  Same absolute claim; you

25  couldn't use it in any way, it wouldn't matter how it is.

1          The complaint also seeks relief in subparagraph f,

2    delivery up of all material based on the systems or methods used

3    by The Foundation in connection with the Transcendental

4    Meditation trademark.

5          Now, this, Your Honor, in our understanding, is the

6    claim not necessarily to misuse of the trademark but to

7    reference to any system or methods or part thereof used by the

8    plaintiff.  Now, Mr. Knoles can't refer to that.  Under

9    trademark law, he couldn't even tell you, if it's true, which it

10   apparently is and the complaint doesn't dispute this, that he

11   tells people to practice meditation for 20 minutes twice a day.

12   Trademark law prohibits that even if it's true.  He couldn't

13   tell you that his course is taught in three--four sessions,

14   including an introductory session.

15         Trademark law provides no monopoly on a reference to

16   teaching methods that are indisputably used by these defendants,

17   and this illustrates the breadth of the claims.

18         Finally, in subparagraph g, delivery up of all

19   material using the Maharishi Mahesh Yogi's name or likeness.

20   Same point.  Despite the fact that Mr. Knoles has an undisputed

21   association, in particular being taught how to teach this type

22   of meditation by the Maharishi, trademark law prevents him from

23   referring to it.

24         Now, Your Honor, the question that arises for this

25   Court, in our respectful submission, on this motion to dismiss

1  is whether the Court should approve this sweeping and

2  monopolistic approach by allowing such claims to proceed.

3        In our respectful submission, and based on the cases

4  we have cited, if such claims can proceed, that will involve a

5  radical expansion of trademark law allowing it to be used by

6  plaintiffs or any other dominant market player in a similar

7  position, but in this case the plaintiff, to prevent these

8  competitors from referring in any way to Plaintiff's mark even,

9  whereas here, the defendants' services are offered prominently

10 and repeatedly using their own distinctive brand name and

11 unambiguously and clearly disclaim any type of association with

12 the plaintiff.

13       Now, this is contrary to the authority we have cited

14 from this circuit and other circuits which says that trademark

15 law does not prohibit such competitive and comparative

16 advertising by an imitator or otherwise.

17       Now, it should be noted in the context of trademark

18 law and the monopolistic nature of these claims that Plaintiff

19 does not and cannot claim to own this type of meditation or all

20 or any part of the methods used to teach it by the Maharishi or

21 the plaintiff.  There's admittedly no patent on these things.

22       Further, the plaintiff has abandoned, quite

23 appropriately, the allegation in its prior complaint of

24 exclusive and proprietary rights in this form of meditation, and

25 that's in paragraph 56 of the prior complaint, which previously

1  read, "The Transcendental Meditation technique is a proprietary

2  form of meditation taught by The Foundation and its licensees."

3          Now, Plaintiff's complaint also shows that Plaintiff,

4  in fact, represents on its Web site that it did not invent all

5  or any part of the teaching methods it uses.  This is in Exhibit

6  C, the affidavit of Mr. Knoles which is attached to the

7  complaint.

8          And Plaintiff's Web site says generally to consumers,

9  quote, when we teach the Transcendental Meditation technique

10  today, we maintain the same procedures used by teachers

11  thousands of years ago for maximum effectiveness.

12          So in our submission, Your Honor, this is a case

13  where, on the one hand, you have sweeping claims to try to

14  monopolize something which cannot be monopolized as a matter of

15  trademark law or any other legal principle.

16          Now, it would be one thing, Your Honor, if the prayer

17  for relief was simply overbroad and should be pared down at

18  trial but the claims themselves were of a narrower scope, but

19  that's not the case here.  And what I seek to do now is to go

20  through the claims and show why they fail to state a claim and

21  why they have what we would say is the broad and fatally

22  defective scope just referred to.

23          I first want to go to the contract claim, Your Honor,

24  which is now the last claim in the complaint.  Previously, it

25  was the first or second one.  This is the first claim through

1  which the plaintiff seeks to monopolize the teaching of this

2  type of meditation under any name.

3       THE COURT:  I can't wait to ask Mr. Zaiger about a

4  lifetime international ban on competition.  But the question I

5  have for you is what do the initials SIMS stand for in that

6  contract or a contract, if it is a contract?

7       MR. BRAUN:  My understanding from the documents in the

8  case, and I'll stand to be corrected on this, is it stands for

9  something called Students International Meditation Society,

10 which is an organization or a series of organizations

11 internationally which very early on, in the late fifties or

12 sixties, were the organizations or organization which was one or

13 the organization promoting this type of meditation in the early

14 period, including at the time of Exhibit C, the alleged

15 contract.  So SIMS is a reference to one of or the primary

16 organization that existed at that time.

17      Now, in its prior order, Your Honor stated the

18 plaintiff somehow contends that it's entitled to enforce this

19 agreement perpetually against Mr. Knoles on a worldwide basis,

20 and Your Honor's just referred to that comment.

21      We say this query is quite apt as Plaintiff has failed

22 to state a plausible breach of contract claim, and in any event

23 the claim must be dismissed under Federal Rule of Civil

24 Procedure 9(f) or on statute of limitations grounds.

25      Let me go to failure to state a claim.  Even if the

1 1972 document were a valid contract, it is not one enforceable

2 by the plaintiff today, Your Honor. Plaintiff alleges two

3 separate and distinct bases to try to enforce the contract, and

4 neither one of them, in our respectful submission, states a

5 claim.

6 In paragraph 270, Plaintiff says that it can enforce

7 the alleged 1972 contract because the plaintiff was a party to

8 that contract. Now, this is evidence from paragraph 270 which

9 says that no--

10 THE COURT: Yeah. The complaint doesn't say when it

11 came in existence.

12 MR. BRAUN: Well, the contract is dated 1972 in

13 Exhibit C.

14 THE COURT: No. I mean when the plaintiff came into

15 existence.

16 MR. BRAUN: I'm sorry, Your Honor. We have,

17 consistent with the Noble case, Your Honor, put into evidence

18 the public records which we say are cognizable on a motion to

19 dismiss under the Noble case showing that the plaintiff was

20 first established in 1993, and in the resistance that wasn't

21 referred to or disputed, so we understand that's a matter the

22 Court can and should take into account in relation to this

23 claim.

24 So the contract, which is dated 1972, the plaintiff

25 couldn't be a party to it because it wasn't even in existence

1    for more than 20 years.  Now, the plaintiff also cannot enforce

2    the contract as a party because when you look at Exhibit C, the

3    plaintiff is never referred to as a party, and the only parties

4    named as parties are Mr. Knoles and the Maharishi.  There's a

5    little signature block for the Maharishi, and it looks like he

6    didn't sign it, but we won't go into that for the moment on this

7    motion.

8         But the point is when you look at the timing that

9    Plaintiff came into existence and you look at the four corners

10   of the contract, the plaintiff is not a party and it couldn't

11   possibly be, and any such claim is either impossible, we would

12   say, or implausible.

13        Now, the second basis, alternatively, in paragraph

14   271, is a somewhat conclusory allegation of third-party

15   beneficiary status.  Paragraph 271 relies on an allegation that

16   Plaintiff currently and for some unspecified time, apparently

17   maybe going back to 1993--maybe not, it isn't said--has the U.S.

18   trademark rights to the terms Transcendental Meditation and

19   teaches meditation using those terms.

20        But this cannot plausibly support a claim of

21   third-party beneficiary status at the time the contract was made

22   more than 30 years ago, especially in circumstances where the

23   plaintiff did not exist until 20 years thereafter.

24        Further, as stated in the Houbigant case, cited by the

25   defendants in their brief, an allegation of third-party

1 beneficiary status requires some specific factual allegations

2 about the intent of both parties to confer such status at the

3 time of making the contract, and, in our respectful submission,

4 no such sufficient allegations have been or could be made here.

5 Plaintiffs apparently rely, for third-party

6 beneficiary status, on the language of the contract.  The

7 contract refers generally to organizations founded by Maharishi.

8 Now, that appears to be a reference in the past tense, but even

9 if it could be construed to be one 20 years in the future, no

10 claim can be stated on that basis for the following reason:

11 Plaintiff does not actually allege that when it was founded in

12 1993 it was founded by the Maharishi.

13 Your Honor will recall the prior pleadings stated that

14 the plaintiff was founded through the overall organizational

15 efforts or with the encouragement of Maharishi.  Those

16 allegations are now abandoned, and Plaintiff has come forward

17 with paragraph 25.

18 What paragraph 25 says is that the Maharishi

19 "encouraged his early students to found organizations around the

20 world," including the plaintiff.  So paragraph 25 makes it clear

21 that this plaintiff was not founded by the Maharishi, it was

22 founded by some unspecified early students.  Well, the four

23 corners of the contract refer to "founded by."

24 Now, this claim of third-party beneficiary status is

25 completely at odds with the terms of the contract.  Now all

1  that's left to say about this is paragraph 270 is the closest

2  Plaintiff comes to trying to make even a conclusory allegation

3  that it was founded by the Maharishi, but it doesn't even do so

4  there.

5          Now, any such allegation would contradict 25 and make

6  the claim implausible, but what is said in paragraph 270?  The

7  plaintiff was either founded by or its founding was authorized

8  by the Maharishi.  Well, either-or, Your Honor.  Maybe it was

9  founded by him and maybe it wasn't, and paragraph 25 says it

10  wasn't.

11          Now, given the other circumstances of this contract

12  and when Plaintiffs came to exist and the requirements of the

13  Houbigant case, Your Honor, there's no plausible claim in this

14  case alleged in this pleading that Plaintiff was an intended

15  third-party beneficiary entitled to enforce the contract today.

16          All that is alleged is that the plaintiff was founded,

17  admittedly 20 years after the pledge, in unspecified

18  circumstances by unspecified people who were early students of

19  the Maharishi and not by the Maharishi.  There are no specific

20  allegations of the type contemplated by Houbigant about the

21  Maharishi's role.  It's never said he was an officer, director

22  or did anything else specifically to cause the founding of this

23  organization.

24          Now, for those reasons alone, we say the contract

25  claim should be dismissed.  But there's an alternative and

1   sufficient basis to dismiss that claim, which is under Federal

2   Rule of Civil Procedure 9 and the statute of limitations.

3           Now, the prior complaint, in our view, acknowledged

4   that the alleged breach occurred in 1997.  It made a series of

5   allegations which, read literally, indicated Mr. Knoles learned

6   from the Maharishi in 1972.  He then taught Transcendental

7   Meditation with an affiliate of the plaintiff without any

8   objection from anybody for 25 years.  Mr. Knoles tells you it

9   was his whole livelihood.  That is in his affidavit attached to

10  the complaint.

11          Now then, in 1997, it's admitted he disassociated

12  himself from all such organizations affiliated with the

13  plaintiff and began to teach meditation independently.  It's

14  then said that his teaching involves a wholesale appropriation

15  of the methods.

16          Now, my friend, the plaintiff, says that that doesn't

17  really indicate to Your Honor that what he was teaching then is

18  Transcendental Meditation.  We haven't actually come out and

19  told Your Honor that and affirmed that this thing is barred by

20  the statute of limitations, but the case law indicates under

21  Rule 9(f) that, whereas here, a pleading indicates that a claim

22  is time barred, the plaintiff is required to allege facts

23  sufficient, at least at the motion to dismiss stage, to avoid

24  the limitations period.

25          Now, when you look at Mr. Knoles' affidavit attached

1   to the complaint, it makes it absolutely clear that the alleged

2   breach started in '97, and the complaint in no way contradicts

3   that and, in fact, tends to support it.

4            Now, by watering down these allegations a little bit

5   in the second complaint, Plaintiffs have tried to recede further

6   from giving the Court any facts about when this claim arose or

7   when Plaintiffs became on actual or inquiry notice.  But that's

8   exactly the tactic or approach, Your Honor, that Rule 9(f) is

9   designed to deal with; otherwise, the function of Rule 9(f), as

10  Your Honor referred to, to weed out claims, will never be

11  possible.

12           Now, the new complaint also recognizes that Mr. Knoles

13  learned to teach in 1972, recognizes that he taught for 25

14  years, then says he started independently in '97 and that he

15  uses methods of the plaintiff.

16           On its face, the complaint indicates that this claim

17  arose in 1997.  If there's any doubt about that, the complaint

18  attaches Exhibit E of Mr. Knoles, which affirms that.  The

19  complaint is more than sufficient to trigger the requirement of

20  Rule 9(f), Your Honor.

21           The complaint also attaches Exhibit G, which says on

22  page 2 that Mr. Knoles came to the United States and started

23  teaching Vedic Meditation, thereby breaching the contract,

24  according to Plaintiffs, in 2001.  Now, both the '97

25  commencement of teaching or 2001 in the U.S. are far outside of

1    any potentially applicable limitations period.

2           Now, for those reasons, Your Honor, the position is,

3    we would submit, either under Rule 9(f) or just on statute of

4    limitations grounds alone, this claim must be dismissed.

5    There's no plausible basis to suggest that this claim isn't time

6    barred, and if Plaintiffs think that they have a plausible claim

7    that this could be timely, they need, under Rule 9(f), to tell

8    Your Honor something about it.  They can't avoid everything

9    that's in the complaint plus Mr. Knoles' affidavit attached to

10   it and just say we don't know anything about the statute of

11   limitations in rising of the claim or anything else.

12          Plaintiffs certainly know, A, when they found out

13   about this, when they were on inquiry notice of it.  They can

14   allege some facts if they think the statute of limitations

15   applied is not applicable or may not be applicable.  And despite

16   the Court's prior order identifying that Plaintiffs have failed

17   to plead sufficient facts related to the statute of limitations,

18   no further matters have been pleaded which give Your Honor any

19   enlightenment about those issues.

20          Now, Your Honor, that's all I have to say in these

21   submissions in chief on the contract claim.  I'd like to move

22   next, if I may, to the false advertising claims.

23          Now, there's two types of false advertising claims.

24   The first one is related to the specific reference to scientific

25   studies made by these defendants and, I'll come to it later,

1   other parties who are not defendants.

2          Now, the specific reference made and cited is simply

3   that scientific studies, over 600 of them, referred to--  Or

4   500, as Mr. Knoles refers to it.  Mr. Knoles, in Exhibit D, says

5   over 500 scientific studies over the past 25, 20 years.  So

6   these studies go back 25 years, Your Honor.  Same thing is

7   referred to in Plaintiff's Web site, which is an exhibit to The

8   Veda Center motion.

9          So these studies, which go back 20 or 25 years, are

10  relied upon by the defendants to say that they support or verify

11  health benefits that are obtainable by the practice of this type

12  of meditation; namely, what's namely Vedic Meditation.  Now,

13  that's the representation.  There is no representation that the

14  subjects who were studied were provided by Mr. Knoles or other

15  people.

16         All that is necessary, what Plaintiffs have to do to

17  provide some support, pleaded support, for their false

18  advertising claim is they have to allege sufficient facts to

19  support a claim that Vedic Meditation is sufficiently different

20  from Transcendental Meditation so that reliance by Defendants on

21  the scientific studies to support health benefits is either

22  literally false or misleading.

23         Now, Plaintiff has failed to plead any such facts and,

24  on the contrary, has only--in the complaint the only materials,

25  as Your Honor recognized previously, are to the effect that what

1 Mr. Knoles teaches is the same.

2          The complaint attaches Exhibit E, the affidavit of

3 Mr. Knoles, which says it was the same.  The prior complaint

4 says he uses a wholesale appropriation of all the methods of the

5 plaintiff, including the most critical one, how you teach

6 persons to teach.

7          Now, with that background, which is quite relevant for

8 the Twombly standard, Your Honor, the plaintiff offers no

9 specific allegations stating any particular way or ways in what

10 Mr. Knoles and the other defendants teach is significantly

11 different or different at all from what the plaintiff teaches so

12 as to trigger a very serious claim of misleading and deceptive

13 or false conduct under federal law.

14          Now, the Court's prior order correctly referred to, at

15 page 3 and Footnote 1, Plaintiff's claim that Vedic Meditation

16 is the same thing.  And, interestingly, despite that, it says we

17 can't rely on the scientific studies.  Now, the new complaint

18 does nothing in terms of a specific pleading of material facts

19 to address this deficiency.  The only specific material in the

20 complaint tends to affirm any lack of difference.

21          Mr. Knoles adopts certain systems and methods of the

22 plaintiff.  Mr. Knoles, in Exhibit E, confirms he teaches

23 exactly the same thing that he taught with the plaintiff's

24 affiliate and that he learned from the Maharishi.

25          The complaint also acknowledges that Mr. Knoles was

1  fully trained by Maharishi Mahesh Yogi to teach this type of

2  meditation and did so for 25 years.  Everything in the complaint

3  indicates it's the same.

4       Now, in order to survive the Twombly standard,

5  Plaintiff would have to come forward with some specific

6  allegation to enable Your Honor to say that this claim is

7  plausible, and they haven't done it.

8       In the prior complaint, Plaintiff alleged that, due to

9  quality control procedures, what Mr. Knoles teaches cannot be

10  the same.  Well, that was just a conclusory legal allegation,

11  and that has been removed.

12       What Plaintiff does, the closest they come to making

13  any allegation here, is in paragraph 31.  They refer to the fact

14  that the plaintiff has certain quality control procedures which

15  the plaintiff uses to enhance its brand and assure customers

16  that the quality of what it teaches is what it intends.

17       It's not specifically alleged that Vedic Meditation is

18  materially or relevantly different from what Plaintiffs teach

19  due to the absence of any same or similar quality control

20  procedures of Mr. Knoles or otherwise.  Plaintiffs are, of

21  course, free, Your Honor, to require their teachers to come in

22  and be recertified and subject to their supervision as much as

23  they want, but that, the mere fact that they do that, there's no

24  allegation that it makes their type of meditation relevantly

25  different.

1          It's also not even alleged that these quality control

2     procedures were in place at the time of most or any of the

3     scientific studies going back 25 years or that they are critical

4     or necessary to the quality of those studies.  What you get in

5     the complaint is simply some conclusory allegations that it

6     would be false to say--to rely on the scientific studies or it

7     would be false to say that these are the same.  That's not

8     enough, Your Honor, in light of the other materials we've

9     referred to.

10          And also, as far as the reference to scientific

11    studies goes, it is not in terms of a reference that these two

12    types of meditation are in every single respect identical or the

13    same.  It is simply a representation that they are the same or

14    sufficiently similar to make reliance on the scientific studies

15    not false or misleading.

16          They can't make a claim out of this reference to

17    scientific studies by recharacterizing what it says, Your Honor.

18    Under the false advertising law, the representation made has to

19    be literally false, not something you'd make out of it, or it

20    has to be misleading.  There's nothing here to support that

21    claim.  There's no identification of any particular difference

22    in any terms.

23          And if Plaintiffs want to bring this serious federal

24    law violation claim of false advertising, we say, under Rule

25    12(b)(6), to make the serious allegation that, with intent to

1   deceive, Mr. Knoles is saying that his meditation is the same or

2   substantially similar, they have to tell you why it is they

3   think that, what it is they think Mr. Knoles does differently

4   that is relevant or material.  And there's nothing, and they

5   don't know.

6          And if they do know, why shouldn't Your Honor, in

7   applying Rule 12(b)(6) and Rule 8 and Rule 9, require them to

8   tell you and to tell these defendants who are subject to these

9   very serious allegations?

10          Now, for these reasons, the false advertising claims

11  are just not plausible, fail to state a claim, and are based

12  essentially on conclusory, formulaic allegations.

13          Now, the same conclusion applies to the other claims

14  relating to scientific studies in paragraph 55, Your Honor,

15  which are based on references to scientific studies by third

16  parties who were taught by Mr. Knoles to teach Vedic Meditation.

17  There's no allegation that what they do is any different from

18  what Mr. Knoles teaches.  Further, Exhibit E confirms that

19  Mr. Knoles has taught exactly what he does to such people.

20          Now, for all those reasons, Your Honor, the false

21  advertising claims fail to state a claim and should be

22  dismissed.

23          Now, those are the false advertising claims related to

24  the scientific studies, Your Honor.  There's another allegation

25  in the claim, and we don't really know whether it's just a

1  repetitive reference to the scientific studies or whether it

2  actually seeks to allege particular conduct, but this is a

3  reference that, apart from relying on the scientific studies,

4  Defendants, at some times and places, allege that Vedic

5  Meditation is the same or equivalent.

6        Now, these claims are generally stated in conclusory

7  and general terms without particulars of time and place.  Now,

8  there might be one or two items where there's some particulars,

9  but otherwise there aren't.  Now, we're entitled to know

10  something about when we are alleged to have said this, which

11  defendant and in what circumstances.

12        An example of this conclusory, formulaic and

13  inadequate allegation of sameness, of a representation of

14  sameness, is paragraph 115.  It states, "Defendants represent to

15  consumers that the Vedic Meditation technique and the

16  Transcendental Meditation technique are the same, which, among

17  other things, represents a false equivalency."

18        Well, you can't just say that they make a

19  representation and it's false, Your Honor.  That's not

20  sufficient to survive a motion to dismiss.  It's just a

21  formulaic and threadbare allegation.

22        Now, especially in light of the other materials in the

23  complaint indicating the sameness of these techniques, in the

24  absence of any relevant or sufficient allegation of difference,

25  these claims arising from references to scientific studies by

1   third parties, references to scientific studies by Mr. Knoles,

2   or alleged statements that the two meditation services are the

3   same should be dismissed.

4           Now, Your Honor, I just want to make a very quick

5   comment about vicarious liability of Mr. Knoles and The Veda

6   Center for these statements by other meditation teachers.  These

7   other meditation teachers supposedly are alleged, taken as true,

8   to refer to the scientific studies.  Now, these are up to 2012

9   and at various periods.

10          Now, The Veda Center, how could it be liable for

11  inducing such statements?  The Veda Center, insofar as we've

12  been shown a copy of its Web site in Exhibit G, dated 2011,

13  makes no reference to scientific studies at all.  How could it

14  have induced these people?

15          Now, apparently whatever Mr. Knoles does, The Veda

16  Center is liable for as a defendant, but there's no sufficient

17  allegations to support that either, Your Honor.  The Veda

18  Center, as the motion shows, was established in July 2010.  It's

19  alleged in conclusory terms that it's owned, controlled and

20  directed by Mr. Knoles, but that, even if it was--that

21  conclusory allegation could suffice, it doesn't make The Veda

22  Center liable for whatever Mr. Knoles does.

23          If Mr. Knoles were an employee, a director or agent,

24  that would be one thing.  If he controls it, that doesn't make

25  it liable for his conduct.  But in any event, there's no

1  sufficient basis for the Veda Center being liable for references

2  to scientific studies.

3  Now, Mr. Knoles, how could he be vicariously liable

4  for people referring to scientific studies?  What appears from

5  the complaint is that through December 2005, Mr. Knoles, on his

6  own Web site, referred to scientific studies.  It's not alleged

7  that after 2005 he ever did so, not specifically alleged.

8  Now, what appears from the complaint is up to 2005

9  Mr. Knoles referred to scientific studies on his Web site.  He

10  got a letter from the plaintiffs, he took it off.  But,

11  nevertheless, he's supposed to be responsible in 2012 and later

12  periods for inducing people to do the thing which he stopped

13  doing.

14  If Plaintiff wants to allege some vicarious liability

15  for an unspecified number of third parties, Your Honor, in our

16  respectful submission, they need to come up with a plausible

17  claim, and they haven't done so in relation to reference to

18  scientific studies or otherwise.

19  Now, Your Honor, I'm going to now seek to move to, and

20  I'll move a little bit more quickly, if Your Honor pleases, the

21  trademark infringement and passing off claims.

22  Now, Counts 1 and 3, Your Honor, seek to make claims

23  of trademark infringement.  Now, trademark infringement is 15

24  U.S.C. 1114.  Count 3 refers to it as unfair competition.  It's

25  trademark infringement, Your Honor, 1114.

1          The language of the statute and the Eighth Circuit

2   cases construing it unambiguously and clearly require a use of

3   the mark in commerce by the defendant, use of the mark or a

4   colorable imitation.  The use of the mark must be so as to

5   create a substantial likelihood of confusion by ordinary

6   consumers that the defendant's services are supplied by,

7   sponsored by or affiliated with the plaintiff, and the use must

8   not be a nominative or fair use.

9          And the nominative or fair use analysis replaces the

10  likelihood of confusion.  If you come within that, you don't

11  even worry about that.  It's not confusing as a matter of law.

12         Now, we've addressed, and I won't go back into it,

13  that the McCarthy treatise couldn't overcome the Eighth Circuit

14  precedent anyway and it doesn't say the use is required.  In our

15  respectful submission, by the language in the Eighth Circuit

16  precedents, particularly the Mercedes case, and many instances

17  in the complaint, the plaintiffs have either failed to allege

18  any use at all or an actionable use.

19         And to say that no use is required, Your Honor,

20  there's a concept in the plaintiff's--running through the

21  plaintiff's complaint of an implied use of a mark.  Well, such a

22  concept is foreign to the Mercedes case, Eighth Circuit

23  precedent and the language of the statute.

24         The Mercedes case, Your Honor, is particularly

25  instructive.  In that case, it was accepted that the defendant

1   adopted a phone number, 1-800 with some particular letters, and

2   that that phone number, those letters, were adopted precisely to

3   call to mind Mercedes because when you translated those letters

4   into--those numbers into letters you got 1-800-Mercedes.

5           And it was accepted that the defendant adopted this

6   symbol in order to call to mind the plaintiff's trademark so

7   that dealers he contracted with and other people would call him

8   and he could make money referring people to the repairs of

9   Mercedes cars, and the court held there's no use of the mark.

10  1-800-Mercedes is not a mark.  1-800-these numbers is not a

11  mark.  There's no implied use of a trademark.  This defendant

12  didn't use the term "Mercedes."

13          The concept of an implied use of the mark, Your Honor,

14  is also a very pernicious concept which, if adopted, would

15  expand trademark law in undefinable and, we would say, enormous

16  ways.

17          I might, for example, refer a person, if I was

18  Mr. Knoles, and say, "If you really want to read a great book

19  about meditation, I recommend the work of so-and-so."  But what

20  if that book, somewhere in his 150, 300 pages uses the words

21  "Transcendental Meditation"?  I've called to mind the trademark.

22  I've impliedly used it.  Trademark law does not go that far,

23  Your Honor, and the Mercedes case proves it.

24          And it doesn't matter what Defendants' intent is.  You

25  have to have a use of the mark, it has to be to use that--to

1  have that substantial likelihood of confusion by ordinary

2  consumers, and it has to not be a nominative fair use.

3       Now, the passing off claims arise under a different

4  statutory provision, 15 U.S.C. Section 1125(a)(1)(A).  Now, the

5  requirements of this claim, where the passing off is based on

6  use of a mark, are essentially the same as trademark.  Where the

7  passing off is based on use of a device or symbol, then the

8  other requirements of substantial likelihood of confusion apply,

9  so--  And that's consistent with what the Eighth Circuit says in

10  Mercedes as well.

11       Now, the key requirement of passing off, though, Your

12  Honor, is also that the use must be such that ordinary consumers

13  are misled or confused that the plaintiff is the supplier of or

14  affiliated with the defendant's services.

15       Now, in our submission, Your Honor, Plaintiff has

16  failed in this pleading to meet these basic requirements under

17  the Twombly plausibility standard, and I'm going to indicate to

18  Your Honor why.  But before I do that, I need to identify, and

19  this is referred to in our brief, how it is that trademark

20  claims are analyzed.

21       A given use of the trademark, for example, in a

22  presentation, a Web site, or in a promotional brochure or in a

23  store display gives rise to a discrete claim of trademark

24  infringement.  That presentation or use is evaluated to see if

25  the defendant has violated trademark law, and it's shown by the

1  Calvin Klein case and other cases.  There's three store displays

2  here.  This one uses the mark in this way.  It's okay.  This one

3  isn't.

4          Now, what Plaintiff apparently tries to do is to make

5  a RICO case out of this.  We're going to throw up all different

6  sorts of different uses.  There's a Facebook posting over here,

7  the Web site's over here, there's an e-mail over here.  If we

8  can sort of mix those all up together, all of them constitute

9  one big global trademark claim.

10          And that's not the way it works, Your Honor, and if it

11  did, trademark law would be, again, a tool to be used like a

12  RICO claim to suppress competition, and its boundaries would be

13  essentially unlimited; take one statement I have and then get

14  damages for other statements I've made and even get treble

15  damages.

16          Now, having regard to those principles, the way I wish

17  to proceed, and I'll do it briefly with these claims, is by as

18  alleged to each claim.  And this isn't a matter of, on a motion

19  to dismiss, parsing each separate allegation, Your Honor, which

20  you referred to quite correctly in your order.  This is not

21  parsing each allegation.  It is dealing with each claim, and

22  that's what needs to be done on a motion to dismiss.

23          Now, the main claims against each defendant--the main

24  claim against each defendant is that its Web site violates

25  trademark law.  And Your Honor can appreciate that the Web sites

1 in their nature must be the primary portal through which people

2 access services and obtain information about each of these

3 defendant's services.  They are generally accessible by

4 everybody over the Internet.

5          And if these claims against each Web site are

6 dismissed, the scope and nature of this case as to liability and

7 damages is radically reduced.  All that would be left, assuming

8 they're not dismissed, would be claims as to isolated e-mails

9 with an individual, a posting on Facebook, which is of much less

10 extensive distribution and everything else, and damages would

11 have to be assessed in relation to any such claims.

12          But our primary submission in relation to trademark

13 claims is that whatever else may be true, Your Honor, the Web

14 site of Meditation House, the Web site of Knoles and Veda Center

15 after 2005, they fail to state a claim, and that radically

16 transforms this case.

17          If, in fact, these Web sites, in particular that of

18 The Meditation House, state a claim, there's going to be no

19 competitor who could ever escape a trademark lawsuit in any way

20 when it seeks to compare itself to the services of its

21 competitor.

22          Now let's look at The Meditation House Web site first,

23 Your Honor.  The complaint claims that the Web site of The

24 Meditation House, which is shown in Exhibit I, infringes

25 Plaintiff's mark and falsely designates the plaintiff--falsely

1  designates Meditation House's services as being supplied by the

2  plaintiff or affiliated with the plaintiff.

3         Now, Your Honor, if you look at Exhibit I, this is not

4  merely an implausible claim, it is, in our respectful

5  submission, an impossible claim.  What we see in Exhibit R is

6  that The Meditation House repeatedly promotes its services under

7  its own distinctive brand name, which is in no way similar to

8  that of the plaintiff; Vedic Meditation/Transcendental

9  Meditation.  The type of similarity that one sees giving rise to

10  a trademark claim is nothing like this.

11         Now then, that alone, Your Honor, may be sufficient to

12  negate a trademark claim.  Anybody who is reading this knows

13  that I supply Vedic Meditation, and if they're aware of

14  Transcendental Meditation, it's a different brand name.  But

15  this Web site goes further.

16         Before I go to that, now, the reference to scientific

17  studies, about which a great deal is made in this complaint,

18  certainly cannot give rise to a trademark violation because that

19  reference makes no use whatsoever of the plaintiff's mark.

20  Mercedes case.

21         Now then, what you're left with in the Vedic--in The

22  Meditation House's Web site, Your Honor, is that the only way it

23  could infringe the plaintiff's trademark is by reference to and

24  as a result of the express, complete and absolute disclaimer of

25  any affiliation with the plaintiff or its mark.

1        Now, how this disclaimer could do so, Your Honor, is

2   beyond me.  Jules Green and The Meditation House, L.L.C.

3   expressly disclaimed any association with Maharishi Foundation,

4   Limited, its programs, its method, its trademark Transcendental

5   Meditation, the common words transcendental meditation as

6   defined in Webster's dictionary.

7        This is not some ambiguous disclaimer.  No one could

8   plausibly or possibly read this disclaimer or any other portion

9   of this Web site and be led to the conclusion that the

10  Meditation House gets its services from or is affiliated with

11  the plaintiff.  Absolutely to the contrary.

12       If this Web site violates trademark law, there's

13  nothing any competitor can do to avoid trademark law.  It may

14  believe that somebody's going to make a trademark claim against

15  it.  It tries to protect itself by making a disclaimer.  "Ah,

16  the disclaimer's a violation."

17       And certainly no competitor could make a comparison,

18  because once they mention the plaintiff's services, they then

19  have to make it clear that they're not them.  And they put in a

20  disclaimer, and that's actionable.  And there's no case to

21  remotely support the proposition that this disclaimer could give

22  rise to a trademark violation.  Plaintiff cited one case that

23  was reversed, Your Honor, because there's nothing else out

24  there.

25       Now, that is sufficient to enable and, we would say,

1    respectfully, cause the Court to dismiss the claim that the Web

2    site of The Meditation Center violates trademark law.  It

3    doesn't.  And to hold otherwise, we would say, is a novel, if

4    not dangerous, precedent.

5          Now, no different conclusion arises--

6          THE COURT:  You've just got a few minutes left.

7          MR. BRAUN:  Sorry.  Okay.

8          No different conclusion arises from Exhibit G being

9    the Knoles Web site after 2005 and The Veda Center Web site.

10   Indeed, Exhibit G makes no use of Plaintiff's mark at all, even

11   in the disclaimer, which is in a slightly different form.

12         Now, Your Honor, in our respectful submission, the

13   next--the last two things I'd like to go to, Your Honor,

14   obviously, for the same reasons, no claim of passing off can be

15   made.  Nothing could be further from passing off in terms of

16   what these Web sites say.

17         Now, Your Honor, I want to make briefly reference to

18   the new allegations on Defendants.  And the first thing about

19   the new allegations, Your Honor, is that whatever may be true

20   about them, they don't change the fact that the claims against

21   the Web site and scientific studies have to go.

22         Now, the new allegations, Your Honor, the first one is

23   against Mr. Knoles.  Paragraphs 52 and 85 refer to an article, a

24   Web site, The Fix, and the presentation in that document is an

25   article about Mr. Knoles, which article expressly says he's not

1 affiliated with the plaintiff.

2      Then it contains a series of postings. The first one

3 criticizes Mr. Knoles as being somebody who is not affiliated

4 with the plaintiff and is just off to make money on his own and

5 people should go out and use the plaintiff instead.

6      Then Mr. Knoles, in the posting, says, "I'm not

7 affiliated with TM." And then the alleged trademark

8 infringement is somebody says, "I'd like to learn TM," and

9 Mr. Knoles says, "Come and learn with me."

10      Well, the first thing is Mr. Knoles has not used

11 Plaintiff's mark. He said, "Come and learn with me." And in

12 the context of this posting, which we have deigned to provide

13 Your Honor with a copy of it, couldn't possibly give rise to a

14 claim of the use of the mark by Mr. Knoles or unfair

15 competition.

16      Now, we say, Your Honor, similarly, the new

17 allegations against The Meditation House in paragraph 72 also

18 doesn't involve the use of the mark. Paragraphs 74-76 and 103

19 is private e-mail correspondence with Mr. Robbins. Well, it's

20 probably not even in commerce, Your Honor, but the main point is

21 Ms. Green makes it clear that VM is not affiliated with TM,

22 which is another organization.

23      And I should note, Your Honor, when we saw this

24 allegation we went back and reviewed our discovery, and we found

25 that although we had discovered a portion of this e-mail on

1   Facebook e-mail correspondence, we had not discovered the whole

2   thing, and so we provided not only to Your Honor in our motion

3   but also to the plaintiff a full copy.  And that was just an

4   oversight on our part, Your Honor, but it is definitely the case

5   that, in making its claims, the plaintiff didn't have a full

6   copy.

7          But we say there's no alleged use of the mark by

8   Meditation House in the complaint, and when you go to the

9   posting, it's not a plausible claim of trademark infringement.

10         There's also an allegation in paragraph 53, Your

11  Honor, interchangeably and conclusive--interchangeable

12  allegation.  It appears in various places.  Knoles tells his

13  students Vedic Meditation is the same as TM or refers to

14  it--refers to Vedic Meditation and Transcendental Meditation

15  independently.

16         Now, this allegation appears against Mr. Knoles in

17  these conclusory terms in 53, and then it's made against The

18  Veda Center in similar conclusory terms in 86, then it's made

19  against all defendants in 96.  Now, there's no specifics of

20  time, place or manner.

21         But further, Your Honor, the allegation goes nowhere.

22  Mr. Knoles tells his students that Vedic Meditation is the same

23  as Transcendental Meditation.  Well, that's not a trademark law

24  violation.  In any event, it's correct.  Or he uses them

25  interchangeably.  Well, he may or may not.  So the formulation

1  "or," which is repeated throughout the substantive part of the

2  complaint, goes nowhere.

3          Trademark dilution, Your Honor, we rely on the

4  authorities we put in reference.  The disclaimer makes it

5  absolutely clear that Transcendental Meditation is a trademark

6  of the plaintiff.  That's the opposite of diluting the

7  trademark.  It makes it clear that they own it.

8          Now, reference to common words that actually appear in

9  Webster's dictionary has nothing to do with anything.  Is

10  Plaintiff's mark distinctive of its services?  The disclaimer

11  makes clear that it is.  There's no action--cause of action for

12  making something generic.  We've made it clear their mark is

13  distinctive and is owned by them.  That can't possibly be

14  actionable, Your Honor.

15          Your Honor, trade dress, I believe we'll rely on the

16  prior statements we've made against that.  Plaintiffs have the

17  burden of proving and pleading that the elements they rely on

18  for trade dress are functional.

19          It seems, in the paragraph in the complaint, they make

20  an allegation of trade dress by referring to the total image,

21  which is the language of the Gateway case in the Eighth Circuit.

22  They've deleted trade dress, however, from the title.  I don't

23  even know if they make a claim, but if they do, it needs to be

24  dismissed.  Those elements are not functional.  And the total

25  image of the Web site, if you look at it as attached to the

1   pleadings, is just completely different.

2          Now, Your Honor, in conclusion, the pleading is

3   seriously flawed in its overall concept and the specifics of its

4   attempted execution.  It does not cure the deficiencies.  The

5   key claims of breach of contract and trademark and false

6   advertising by the Web sites must be dismissed.  The other

7   claims, although of lesser importance, also fail to state

8   plausible claims, except for the ones I mentioned at the outset.

9          Now, Your Honor, most importantly, it cannot be said

10  under Rule 12(b)(6) or the Twombly case that these claims raise

11  factual issues that are not appropriate to be dealt with on Rule

12  12(b)(6).  Trademark claims are not immune from 12(b)(6), and we

13  have identified reasons why they fail to state a claim or a

14  plausible claim, including no use, no actionable use, and a use

15  which couldn't possibly be confusing.

16         Now, after filing our very brief second motion to

17  dismiss, we identified one additional case.  And my friends have

18  not had it.  We gave it to them this morning.  But it's a case

19  which is on very similar facts dismissing trademark claims.  And

20  subject to, perhaps, if they need some further time to respond

21  to it, we rely on the Hensley case from the Sixth Circuit, which

22  is a 2009 case at 579 F.3d 603.

23         This is an affirmal--affirmance of a dismissal under

24  12(b)(6) of trademark claims in very similar circumstances;

25  distinctive name for the defendant's services, disclaimer, et

1  cetera.

2  So, Your Honor, if it please the Court, those are our

3  initial submissions.

4  THE COURT: Thank you.

5  Mr. Zaiger.

6  MR. ZAIGER: Thank you, Your Honor.

7  This is a trademark case, Your Honor, and a service

8  mark case. The Foundation is a not-for-profit educational

9  institution. The Foundation that is authorized and holds all of

10  the legal rights to enforce the trademark to Transcendental

11  Meditation. It is one of the organizations founded by the

12  Maharishi through the organizations referred to in that

13  agreement the Court referenced earlier.

14  SIMS, Your Honor, was the initial organization that

15  held the legal rights. There's a foundation in the UK.

16  Assignments in the United States rights are all held by The

17  Foundation, and it is part of that organization referred to in

18  the '72 agreement.

19  It's got all the rights to Transcendental Meditation,

20  and it also has all the marketing rights with respect to the

21  Maharishi Mahesh Yogi. It is like Colonel Sanders. Maharishi

22  is like Colonel Sanders as it relates to the services offered

23  and the total package.

24  And they're two separate things, Your Honor. There's

25  service, and then there is the brand and the branding. Now,

1  these are commercial terms to be applying to educational

2  services, but they still apply, and that's where the law puts

3  it.  It has been actively policing the legal rights in the

4  United States of the Maharishi's services and the Transcendental

5  mark for many years.

6       Now, the mark is registered and it has incontestable

7  status which is conclusive presumption of validity as well as

8  ownership of the mark.  It's as to the process the Maharishi

9  developed in the fifties that took an ancient tradition and

10 translated it into components that could be used in the western

11 world with people who actually hold jobs.

12      It doesn't--  It changed it from monks do it hours a

13 day to anybody can do it.  And that's the educational function

14 of The Foundation and that's where its time and money has been

15 spent, in growing and policing that brand.

16      It works through many quality control procedures with

17 respect to the training of individual teachers, with respect to

18 the licensing of such individuals, with respect to

19 recertification of those people.

20      THE COURT:  I'm sure all that's true.

21      MR. ZAIGER:  It is.

22      THE COURT:  Yeah.  Well, and we take it as true for

23 the purposes of this argument.

24      MR. ZAIGER:  And every one of the studies--  And in

25 this case we asked, and they said--Ms. Green said every one of

1   the studies are the studies that the plaintiff refers to.  Each

2   one of those studies was done on the process that--on the

3   specific services that are part of the mark.

4          THE COURT:  So let's say you feed Coca-Cola to rats

5   for six months and it turns out they get super-healthy, and

6   Pepsi comes in and says, "I told you colas are good for rats,

7   and they're good for humans too."  Is that a violation of

8   trademark law?

9          MR. ZAIGER:  Well, Your Honor, when bars were selling

10  rum and Coke--or when bars were taking orders for rum and Coke

11  and getting rum and Pepsi, they got sued.  You can't use Colonel

12  Sanders' face to market chicken.  You can't use--  Is it a

13  generic?

14         For example, if there was something from the ancient

15  tradition of Vedic Meditation, if it's truthful, you can say it.

16  Can you prove it?  Can they prove it when you've got a series of

17  quality control procedures that apply?

18         What we have here is ancient roots.  We've got the

19  Maharishi developing something very specific.  We've got

20  Mr. Knoles involved and making certain promises during that

21  period of time.  We've got him then breaking off.  It's not a no

22  compete, Your Honor.  With respect, it's not a no compete; it's

23  a don't use confidential and our processes case--or contract.

24  That's a difference, I would respectfully suggest.

25         We're not saying Mr. Knoles, Ms. Green or anyone in

1 The Veda Center's organization or any of those people can't

2 teach meditation; we're saying there are certain things they

3 can't say about what they're teaching. One thing they cannot do

4 is say that those studies that were quality tested, and millions

5 of dollars were spent on those studies, that those findings can

6 be used and that they can be referenced.

7 They can go get studies. They can get studies on the

8 similarities and then say if there's some sort of factual

9 relationship to be--statement to be made. But they can't just

10 say, "We're the same," because the same is more than the

11 contents of the box. It's everything that goes with it.

12 Yes, we are asserting trade dress in terms of the

13 total image of the entire thing. We've got celebrity endorsers

14 and we've got actual confusion, Your Honor. We know that

15 because people say, "Yeah, I can't find TM," and they say,

16 "Well, over here, we can do it."

17 Now, the inferences to be drawn from that perhaps are

18 conflicting. Perhaps that's an issue to be found as a matter of

19 fact at the conclusion of the case, but it's not something that

20 can be ruled out from the start.

21 And, yes, Your Honor, we do make a specific allegation

22 that Mr. Knoles' representations about what he learned, when he

23 learned and from whom he learned are false. And you were--you

24 are correct, we do challenge that.

25 Our client has spent much effort and much money in

1  offering educational services for prison inmates, for returning

2  veterans.  Most recently we've seen, and it's part of the second

3  amendment, Your Honor, to the complaint, the studies

4  specifically done on returning veterans and the benefits from

5  it, and we're going to adopt and incorporate that.  And it's

6  done wholeheartedly and with very--and completely unabashedly.

7       Now, for many years, as I said, Mr. Knoles was

8  affiliated with the Maharishi and the organizations.  He

9  acknowledged the authority.  He said he would only work through

10 those foundations, through those organizations, and he followed

11 those obligations.

12      When he stopped and left the organization, it wasn't

13 in this country.  It wasn't subject to any jurisdiction that The

14 Foundation, my client, has with respect to him.  He was in

15 Australia.  He was on a different continent.  Now he tells

16 people he's doing exactly the same thing.

17      Ms. Green, in her interrogatory answers for The

18 Meditation House, said it was the same.  His teachers say that

19 it's the same.  And the most he can say truthfully is that in

20 1997 it was the same.  He cannot truthfully say anything other

21 than in 1997--  Assuming that he stole completely, the only

22 thing he could have stolen was what he had in 1997.

23      The changes, certification requirements, those sorts

24 of things--  And we know he did--he did apparently because of

25 discovery in this case.  The forms are the same forms, the

1   questions are the same questions.  It is the total package that

2   apparently he's performing.

3           But what he doesn't do is he doesn't and can't say, "I

4   follow the same control procedures.  I make sure that the

5   funding--that the studies that are being performed are done

6   under controlled circumstances."  He doesn't do any of those

7   things, all of which are part of the brand, and he can't do

8   that.

9           Now, as I said, the brand includes the charitable, the

10  educational, most significantly the Maharishi's name and

11  likeness.

12          THE COURT:  It seems like by calling it "brand" you're

13  taking trademark law where it's not supposed to go, which is

14  into the function of meditation; how many times a day you do it,

15  how long should the training be, and things that go beyond the

16  use of the words "Transcendental Meditation."

17          MR. ZAIGER:  Well, Your Honor--  I apologize for

18  interrupting.

19          THE COURT:  You didn't.

20          MR. ZAIGER:  I think it's similar to the notion of if

21  Coke and Pepsi were exactly the same--  And they're colas.

22  Certainly, they're colas.  If they were exactly the same inside

23  the can, that would not give, on the one hand, Coca-Cola the

24  right to use the swirl, on the other hand--on the other hand

25  Pepsi the right to use the polar bears or any of those "Teach

1  the world to sing," whatever.  That's part of the brand.

2          And I apologize, Your Honor, but it's--

3          THE COURT:  Because those things have no function at

4  all?

5          MR. ZAIGER:  I'm sorry?

6          THE COURT:  Because those things have no function at

7  all?

8          MR. ZAIGER:  They don't.  And that's what trade dress

9  is.  Does trade dress have a function?  It is the appearance in

10 the market.

11         The chicken--  And, Your Honor, I would suggest, and

12 I'm not sure we've cited either, it's the Tecumseh Poultry

13 versus Perdue, Perdue Farms, District of Nebraska case, which is

14 a Twombly/Iqbal trademark case from the District of Nebraska,

15 and it goes through the analysis.

16         And the Court uses--and I apologize because I'll be

17 inaccurate in whatever adjective I use--something about I think

18 that he says the pleading is spare, or something, and then

19 analyzes it under the Twombly.  That's a case where the term

20 "Smart Chicken" was used and they said the packages looked the

21 same.  They said nobody said "the chicken," you know, wasn't

22 about the chicken.  It was about the things other than the

23 chicken.

24         And we believe, Your Honor, that you cannot, under the

25 law, separate out the goodwill that has been invested in the

1 brand so that money can be raised for charitable purposes, so

2 that the studies can be specifically monitored, those sorts of

3 things, even if we assumed, and we will suggest to you that we

4 don't think that's accurate, that the contents of the container

5 are exactly the same.

6 And the way specific--one specific important

7 difference, and we believe it's--consumers might decide it's not

8 significant in a given case, but you see it all the time in the

9 marketplace, relates to quality control, relates to maintenance

10 of standards, relates to ongoing contacts and education with the

11 people who have chosen to use the Transcendental method, who

12 have--Transcendental Meditation method, who have subscribed,

13 paid the money, whatever.

14 And all of those things differentiate the products in

15 the market, and one of the biggest product

16 differentiations--service, I'm sorry, it is not strictly

17 product--one of the greatest product differentiations is these

18 studies.

19 Now, as I said, Your Honor, there may be other studies

20 yet to be performed that can show that the results can be

21 duplicated in a controlled process with the quality control

22 procedures and all of those sorts of things with Vedic

23 Meditation. There may be other benefits that none of these

24 studies show for Transcendental Meditation. There may be new

25 ways of looking at Vedic Meditation that nobody has ever thought

1  to look at Transcendental Meditation.

2      What we're saying is you can't use ours, and they've

3  admitted that they're using ours, and they say--

4      THE COURT:  And what is "ours"?  Because when you

5  refer to "ours," that just seems to me a way to encompass

6  everything that goes beyond what the trademark laws are designed

7  to protect.  You say "ours."  It's the words Transcendental

8  Meditation and what else?

9      MR. ZAIGER:  Well, I think you look at all--if you

10  take the tests, Your Honor, the specific infringement tests, the

11  factors, the strength of the mark, I'm not sure you could say

12  that there's a stronger mark than we have.  It's incontestable.

13  It's been consistently protected over the years.  It's certainly

14  famous.

15      The image of the Maharishi prominently used,

16  prominently displayed, his name, it is--  And it's almost crude

17  to say that it's the equivalent of Colonel Sanders, but it is,

18  and it's famous.

19      The case that Mr. Braun just mentioned, I don't

20  remember the name of the case, Hensley is the individual.

21  Mr. Hensley's not a famous guy, and it's a specific factual

22  statement in that case that he relied upon and referred to at

23  the end of it.

24      So the strength of the mark, it's conclusively

25  presumed to be valid and owned.  The similarity, there's an

1  admission that the substance is the same.  There's an admission

2  and a use of the trademark Transcendental Meditation until

3  December of 2005.

4          There's a fact issue, but it is a fact issue as to the

5  total package:  Two times, 20 minutes a day; four-day training,

6  introductory and followed by three other days of training; the

7  use of the Maharishi's image and likeness and name; and the use

8  of the studies, all of which, we believe, are the total package

9  of the trademark.  And the trademark is the goodwill that goes

10 with the name Transcendental, Transcendental Meditation.  It is

11 not just if we pour it out on the table what are the contents.

12         The intent to confuse, well, that also is a fact

13 issue.  But the use of the name Transcendental Meditation until

14 2005, the continued use of the studies, the expropriation of the

15 methods, the copying of the methods, the use of the Maharishi's

16 name and likeness, all of those things go to the question of

17 intent to confuse.

18         We've got actual confusion.  We've got actual

19 confusion in this case because individuals--  And discovery will

20 show many more occasions, Your Honor.  I believe we've not been

21 yet permitted to get discovery except limited discovery that

22 Mr. Braun admitted didn't even include entire e-mails, what we

23 have received.

24         We've got actual confusion in this case when you don't

25 have to show actual confusion, you have to show likelihood of

1  confusion.  We've shown that.

2         On the other hand, there's a disclaimer.  The

3  Anheuser-Busch case talks about disclaimers.  Under certain

4  circumstances a disclaimer can actually make it worse.

5         Now, we don't know where this is going to end up when

6  you apply the totality of the circumstances, but it's a complete

7  factually-based dispute, and we've made allegations, specific

8  allegations, with respect to all of those things.

9         The underlying position of the defendants seems to be

10  that there's no protections because it has the same historical

11  roots and it's the same, ignoring whether or not there's a legal

12  right to have it be the same, the substance as opposed to the

13  package.

14         And I need to distinguish the brand, the goodwill.

15  And you know, you can probably go to Save A Lot right now and

16  get a cola product that tastes almost exactly the same as one of

17  the other ones, whether it's Dr. Pepper or Coca-Cola or

18  Pepsi-Cola or whatever.  Obviously, the value has been in the

19  brand and the goodwill that's been--the money's been spent on,

20  and that's the sort of thing we've got in this case.

21         Yes, it has similar historical roots, but The

22  Foundation has the legal rights to it, to use it.  Are we

23  saying--  And we don't know, Your Honor, we're not suggesting at

24  this point and we haven't asked--  And I'm parsing the prayer

25  for relief.  I don't think it offers the Court any useful

1    assistance at all.  But we haven't said if you suggest

2    meditating twice a day, 20 minutes a day, that that's out of

3    bounds.  But we also can't say that that isn't part and parcel

4    of what is the core of Transcendental Meditation.

5             There are--  And this goes to the Court's earlier

6    discussion.  There are many, many different types of

7    meditations.  The Catholic church has one or more types of

8    historically based meditation models.  The Hindus have

9    meditation--  I'm sorry.  Out of Madison, Wisconsin, studied

10   scientific studies on--  I apologize.  It's not the Hindus.

11   It's a different Eastern culture meditation.

12            THE COURT:  Buddhists.

13            MR. ZAIGER:  It is, Your Honor.  Thank you.  I'm older

14   than you are so it's leaving faster.

15            THE COURT:  Not much.

16            MR. ZAIGER:  And those are studies, they're valid

17   studies.  We're not saying that the Buddhists can't study, at

18   the University of Wisconsin, the scientific benefits of what it

19   is that they do or dictate to the researchers at the University

20   of Wisconsin or anyplace else how they perform their studies.

21            We're saying these, and it's a total of 600 studies at

22   more than 250 institutions, medical schools and universities,

23   that these particular studies studied something specific, and

24   the something specific that those studies studied were

25   individuals trained under this quality control process and

1  everything else that goes to the same.

2          Perhaps that can of Save A Lot cola has the same

3  health benefits or makes you happier or whatever and that that

4  can be scientifically proven.  Let it be proven.  They can't say

5  it without proving it, and it hasn't been proven.

6          As I said, we talked about total dress, Your Honor.  I

7  pretty much covered that.

8          The dilution, this is a--  And let me talk about use.

9  A package of poultry that has "Smart" on it, that's the Tecumseh

10  case, Perdue Farms, the District of Nebraska case.  There's no

11  adoption of the trademark, you know, the question is, and the

12  Court said this is for the case to determine.

13          In this case, ceasing to use the Transcendental

14  Meditation name in 2005, we're not suggesting that that didn't

15  change circumstances.  It did.  Holding on to everything else,

16  holding on to everything else, however, and insisting it's

17  exactly the same, that's not quantifiable.  It's not provable.

18  And a lot of money has been invested in the brand and the

19  public's perception of Transcendental Meditation.

20          It's interchangeable, that's what those confusion

21  incidents reflect.  Is it?  Perhaps.  Has it been proven to be?

22  Are the quality control procedures the same?  Do you know if you

23  take a thousand different people and assess each and every one

24  that they all the got the same experience?  They were taught by

25  different people.

1          How much is invested in ensuring the consistency of

2    the service that's being offered?  Is anything being invested in

3    ensuring the consistency?  What sort of follow-up?  All of those

4    things filter back.

5          Now, on the contributory and secondary liability, same

6    issue, continued reference to studies.  Ms. Green is saying,

7    "Well, I got the study stuff from Mr. Knoles.  He told me it was

8    the same."  That's exactly what we're talking about.  It's a

9    continuing to hold on to what he had before 2005, at which time

10   he relinquished use of the words "Transcendental Meditation" but

11   apparently nothing else.

12         And our determination, our becoming aware of that,

13   occurred after that time, and it continues.  And the information

14   that's been cited is current.  I will tell Your Honor that on

15   The Veda House--  It's outside the record, so I apologize in

16   that regard, but I've personally witnessed it on the--I'm

17   sorry--The Veda Center's Web site.

18         Recently, one of the big names with our brand happens

19   now to be Oprah Winfrey.  And Oprah Winfrey has done several

20   shows about Transcendental Meditation, has come to Fairfield,

21   Iowa, has shown a little elementary school kids meditating.  And

22   one of those things showed up on The Veda Center's Web site.

23   They yanked it down, but it was there.  We've got it.  We can

24   offer it.

25         And so this notion of confusion; "Oh, here's Oprah

1  Winfrey.  Well, I'm going to associate her with what I'm selling

2  now."  And, you know, The Beatles were famous as it related to

3  the Maharishi, and I guess it depends on your perspective

4  whether that's positive or negative.  But Jerry Seinfeld, I'm

5  not sure that's a good thing.  It depends on what part of the

6  country you're in, perhaps.

7       But those are things that give the brand value, and

8  just because it's educational services doesn't mean that there

9  isn't a brand.

10      THE COURT:  Before you go further, do you allege that

11 Knoles has a connection with The Veda Center?

12      MR. ZAIGER:  Yes.

13      THE COURT:  What is it?

14      MR. ZAIGER:  Owned and controlled.  And I don't have

15 the paragraph cite, Your Honor, but--

16      THE COURT:  Okay.

17      MR. ZAIGER:  --we say he's--  And Mr. Braun

18 specifically referenced that, owned and controlled.  Its

19 current--  The person listed on the Web site now is Charles

20 Knoles, Mr. Knoles' son, who had once been a student at the

21 university in Fairfield.

22      So, Your Honor, I think I've covered what I intended

23 to cover.

24      Oh, the Mercedes case, not a use, was not promoted so

25 it wasn't a use.  He just picked the numbers, and if you typed

1  in the letters, you got it.  So what the Court held was this guy

2  picked a great spot to get rebounds, and he had a right to stand

3  where he was standing and then they landed in his lap.

4         But he never--he never promoted it.  He just got

5  the--he just got the letters.  That's not a use.  Far different

6  from use of the name and likeness of the Maharishi and the

7  studies, among other things.

8         Thank you, Your Honor.

9         THE COURT:  Thank you very much.

10        Five minutes, no more.

11        MR. BRAUN:  Your Honor, there are a number of matters

12 referred to that are not in the pleadings and are contrary to

13 the pleadings, and they cannot, in our respectful submission, be

14 used.

15        Mr. Zaiger tells you that, in fact, the plaintiff was

16 founded by the Maharishi because it has a particular

17 relationship.  The plaintiff has a particular relationship with

18 SIMS.  There's nothing in the complaint about that.  It's to the

19 contrary.

20        And all the other matters that are referred to outside

21 of the pleadings and are contrary to the pleadings, we'd submit

22 that those are not cognizable here.

23        A major point made by Mr. Zaiger is that they have all

24 rights to the name and likeness of Maharishi, which is like

25 Colonel Sanders.  Well, Your Honor, the only trademark alleged

1   in this case is a trademark to the terms Transcendental

2   Meditation.  No trademark is alleged for the name or likeness of

3   the Maharishi, and, accordingly, no trademark infringement or

4   trademark dilution claim could arise from the name and likeness

5   of Maharishi, and those claims must be dismissed.

6           Now, trade dress, we'll rely on our submissions about

7   that.

8           Mr. Zaiger also refers to the scientific studies as

9   "our" studies and says there is millions invested in them.  But

10  the materials attached to our motion to dismiss, which is the

11  plaintiff's own Web site--this is The Veda Center motion,

12  Exhibit C--show the plaintiff saying what is correct; these

13  studies, over the past 25 years, were funded by over $20 million

14  in grants, public money from the National Institutes of Health.

15          So these studies aren't owned by Plaintiff, and the

16  only question is whether there's any specific allegation of

17  difference in the complaint between these two meditation

18  services, and there isn't.

19          My friend says, "Well, Mr. Knoles has to prove that

20  it's the same."  He doesn't.  Plaintiffs have to allege some

21  difference, and there is not one thing.

22          Now, in relation to statute of limitations, Mr. Zaiger

23  seeks to offer some additional allegations outside the

24  pleadings:  "Well, when Mr. Knoles stopped in Australia, he was

25  out of our jurisdiction.  We didn't know."  Well, that's exactly

1 the sort of thing, if he wants to plead it, he can plead, and it

2 is required to do so under 9(f).  This is a worldwide contract,

3 and if the plaintiff wants to enforce it, it better be

4 worldwide.

5      THE COURT:  I don't think you have to plead away

6 defenses, possible defenses.

7      MR. BRAUN:  The one exception, Your Honor, under Rule

8 9(f), and we've cited about four or five Eighth Circuit cases to

9 this effect, Rule 9(f) makes allegations of time and place

10 material for the statute of limitations.

11      And these Eighth Circuit cases hold--this is an

12 exception to the rule, Your Honor, as mentioned--where a

13 complaint indicates on its face that conduct occurred outside of

14 limitations period, matters relating to avoidance must be

15 pleaded, and if they're not, the claim must be dismissed.  And

16 it is an exception to the rule, but it's a very well-established

17 exception, Your Honor.

18      The claims based on Maharishi, that they have all

19 sorts of rights in his name and it's the most significant,

20 cannot support a claim of trademark infringement and dilution.

21 There's only one trademark here, and that's the terms

22 Transcendental Meditation.  Colonel Sanders, maybe they have a

23 trademark.  It doesn't matter.

24      Your Honor, the only other matter I'd refer to is that

25 Mr. Zaiger now from the podium tries to tell Your Honor--make

1  certain allegations of difference between these two types of

2  meditation; "The most Mr. Knoles can say is in 1997 it was the

3  same."

4          Well, if Plaintiff wants to allege that what it does

5  today or after 1997 is different than what it was before, it can

6  allege it.  It's not for Mr. Knoles to prove it.  The plaintiff

7  has to allege a relevant difference between these two types of

8  meditation, and, Your Honor, it's not in the pleading at all.

9          Now, the one thing that was avoided by Mr. Zaiger is

10 the Web sites.  He says there's actual confusion.  Well, Your

11 Honor, the Web sites, the main thing in this case, there is no

12 possibility of those Web sites leading to any confusion for the

13 reasons stated.  And the Web sites of Veda Center and Knoles

14 after 2005 don't even make any use of the plaintiff's mark.

15 That itself means the claims have to be dismissed.

16         The last comment is, Your Honor, you asked how an

17 agreement could be enforceable worldwide on a potential basis,

18 and Mr. Zaiger said, "No, no, it's not really a noncompete, Your

19 Honor."  Well, what the agreement purports to do is everything

20 that is--everything that relates to teaching Transcendental

21 Meditation you can't use perpetually and on a worldwide basis,

22 and therefore you can't compete with us because that's what we

23 do.  It's a noncompete, Your Honor.  But the real, the primary

24 reasons why it fails are also the matters we've referred to.

25         If it pleases the Court.  If Your Honor has no other

1  questions, I will retire.

2          THE COURT:  No.  Thank you.

3          I don't usually hold oral argument because I just

4  think that in most cases it increases the expenses to the

5  parties, and I'm against that.  This was helpful.  Thank you

6  very much.

7          MR. BRAUN:  Thank you, Your Honor.

8          (Proceedings concluded at 10:28 a.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          C E R T I F I C A T E

2              I, the undersigned, a Certified Shorthand Reporter of

3    the State of Iowa, do hereby certify that I acted as the

4    official court reporter at the hearing in the above-entitled

5    matter at the time and place indicated;

6              That I took in shorthand all of the proceedings had at

7    the said time and place and that said shorthand notes were

8    reduced to typewriting under my direction and supervision, and

9    that the foregoing typewritten pages are a full and complete

10   transcript of the shorthand notes so taken.

11             Dated at Des Moines, Iowa, this 31st day of May, 2013.

12

13

14                   /s/ Kelli M. Mulcahy
                     CERTIFIED SHORTHAND REPORTER
15

16

17

18

19

20

21

22

23

24

25