IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| MAHARISHI FOUNDATION USA, INC., | |
| Plaintiff, | Civil Case Number: |
| v. | 4:11-cv-00562-JAJ-TJS |
| THE VEDA CENTER, LLC, THOMAS KNOLES, and THE MEDITATION HOUSE, LLC, | **ORDER** |
| Defendants. | |

This matter comes before the Court pursuant the Defendants' Motions to Dismiss for Failure to State a Claim, filed on March 11, 2013 . [Dkt. Nos. 60, 61, 62.] The Plaintiff filed a Response to each of the Motions on April 4, 2013. [Dkt. Nos. 72, 73, 74.] The Defendants replied on April 15 and April 17, 2013. [Dkt. Nos. 76, 77, 79.] On April 18, 2013, the Court Ordered the Plaintiff to file an amended complaint by May 2, 2013, in an effort to add clarity to the pleadings. [Dkt. No. 80.] The Plaintiff filed the Second Amended Complaint on May 2, 2013, [Dkt. No. 83], and the Defendants re-asserted the Motions to Dismiss [Dkt. No. 85]. The Court heard oral argument on May 10, 2013. [Dkt. No. 86.]   The Motions to Dismiss, [Dkt. Nos. 60, 61, 62, and 85], are **granted** in part and **denied** in part.

## I. PROCEDURAL BACKGROUND

This case was originally filed on November 28, 2011. [Dkt. No. 1.] At that time, The Meditation House, LLC, an Iowa Corporation, was the only named Defendant.   On November 15, 2012, almost one full year later, the Plaintiff requested leave of Court to add additional parties. [Dkt. No. 31.] On November 26, 2012, the Court granted the Plaintiff's request and set January 21, 2013 as the deadline for adding parties. [Dkt. No. 33.] On

February 7, 2013, the Plaintiff filed a First Amended Complaint, adding Thomas Knoles and The Veda Center, LLC as parties to the fifteen count complaint. [Dkt. No, 52.]

The Defendants filed Motions to Dismiss for Failure to State a Claim upon which relief can be granted on March 11, 2013.  The Court reviewed these motions and the responsive pleadings and, on April 18, 2013, ordered the Plaintiff to file a Second Amended Complaint to clarify and cure deficiencies in the First Amended Complaint.  [Dkt. No. 80.] Specifically, the Court noted that, "the factual portion of the complaint, paragraphs 7–81, do not assist the court in its function to weed out claims on grounds such as statute of limitations and lack of factual specificity."  [Dkt. No. 80 at 4.]  The Plaintiff filed the Second Amended Complaint on May 2, 2013 and the Court held Oral Argument on the Motions on May 10, 2013. [Dkt. Nos. 83, 86.]

## II. FACTUAL BACKGROUND[1]

"Meditation" is a term used to describe a variety of practices directed at training the mind and body in an effort to realize some physical, mental, spiritual, or emotional benefit. Forms of meditation have been practiced throughout human history and have often been associated with religious traditions and beliefs.  In the 1950s, Maharishi Mahesh Yogi ("The Maharishi")—believing that the "monastic" lifestyle typically associated with meditation was not feasible for modern, western lifestyles—developed a system for teaching and advancing Transcendental Meditation ("TM") in a manner that would be more accessible to those living the "Westerner" lifestyle.  The Maharishi created a TM technique that could be incorporated into a busy lifestyle and practiced for 20 minutes, twice a day.  This technique allowed students to enjoy the benefits of meditation with little interruption on their daily lives.

The Maharishi Foundation, LTD., a corporation organized under the laws of the United Kingdom, is the owner of the "Transcendental Meditation" service

---

[1]This Order arises under a Motion to Dismiss pursuant to Federal Rule of Civil procedure 12(b)(6).  As such, the facts will be construed in the light most favorable to the non-moving party—the Plaintiff.

mark—Registration No. 1,082,923— which, on April 2, 1984, obtained incontestable status under 15 U.S.C. § 1065. The Maharishi Foundation USA, Inc. ("the Foundation") is a Massachusetts corporation, created in 1993, which owns an exclusive license to the Transcendental Meditation service mark, including the right to enforce the mark. The Foundation seeks to maintain the quality of the TM technique as practiced and taught in the United States.  They offer certification in the TM technique and require their certified instructors to take re-certification classes to ensure the ongoing quality of their instructors' techniques and that their services meet the certification requirements.  In doing so, the Foundation is able to ensure that those who learn the TM technique are learning the same thing, regardless of their teacher or location.

Thomas Knoles learned the TM technique in 1970 under the direction of Robert Cranston.  In 1972, Knoles became a TM instructor and, on December 22, 1972, signed a teacher-training agreement with The Maharishi. [Dkt. No. 83, Ex. C.] The Agreement provided:

> It is my privilege, Maharishi, to promise to teach the Principles and Practice of Transcendental Meditation only as a teacher–employee of SIMS[2] which accepts me as such; that I will always hold the teaching in trust for you, dear Maharishi, and SIMS; that I will never use the teaching except as a teacher in SIMS or other organizations founded by you for the purpose of carrying on your work or spreading Transcendental Meditation for the good of Mankind. . . .
> . . . In furtherance of this pledge I acknowledge that prior to receiving the training I had no prior knowledge of such system of Teaching; that there is no other available source where the knowledge of such teaching may be obtained; that such teaching has been imparted to me in trust and confidence; that such training is secret and unique. . . .
> . . . and that to retain the purity of the teaching and movement, you have laid down the wise rule that, should I ever cease to teach in SIMS or other organizations founded by you for the purpose of teaching Transcendental Meditation, I may be restrained by appropriate process from using this secret

---

[2]During the Oral Argument the attorneys identified this organization as the Students International Mediation Society.

Teaching of Transcendental Meditation imparted to me.

[Dkt. No. 83., Ex. C.] At the time Knoles signed this Agreement, he was a resident of Australia.  He returned to Australia and taught the TM technique under the World Plan Executive Council of Australia, Ltd. ("WPECA") until 1997.  After dissociating from WPECA, Knoles remained in Australia and continued to teach the TM technique for several years.

Sometime after 1997, Knoles expanded his teaching services to the United States and began training students in the methods of teaching his meditation.  These students would then go on to teach others in the methods and techniques taught by Knoles.  The Plaintiff alleges that Knoles' website and biography contained many elements that he learned or obtained through his association with The Maharishi, including the use of similar instruction techniques, the likeness of The Maharishi, and questionnaires identical to those used by the Maharishi.  Knoles' website also associated a number of scientific studies on the TM technique with his techniques.

In 2005, the Foundation sent Knoles a demand letter, in which the Foundation informed Knoles of his unauthorized use of the "Transcendental Meditation" service mark and the alleged false representations regarding the correlation between the scientific studies and Vedic meditation. Knoles responded to the allegations in an e-mail dated December 28, 2005.  In the e-mail, Knoles agrees to amend his website:

> I am advised that the claims and assertions in your letter to me, like their precursors, are without legal foundation.  I do not intend to traverse them specifically, as your letter has served to emphasize the desirability, in the interests I represent, of expressly and completely dissociating my teachings from your client's programs and methods.  I will amend my website accordingly.

[Dkt. No. 83., Ex. F.] Thereafter, Knoles included a disclaimer on his website which served to dissociate his teachings from those of the Maharishi Foundation, Ltd. and the "Transcendental Meditation" service mark.  Shortly thereafter, Knoles began referring to his

meditation technique as "Vedic Meditation."

Knoles owns and operates "The Veda Center," an Arizona corporation with its principle place of business in Flagstaff, Arizona. The Veda Center offers Knoles' services in training and teaching meditation techniques. The Plaintiff alleges that Knoles represents that Vedic meditation is the same as TM to both students and consumers alike. Additionally, the Plaintiff alleges that Knoles continues to encourage his students to associate the Vedic Meditation technique with scientific studies specific to TM. Finally, the Plaintiff alleges that Knoles continues to make false representations regarding his association with the Maharishi and his background and training.

"The Meditation House" is an Iowa corporation with its principle place of business in Ankeny, Iowa. The Meditation House brings teachers, trained by Knoles in the techniques of Vedic Meditation, from California to Iowa. In Iowa, these teachers promote and teach the techniques of Vedic Meditation. The Foundation claims that the Meditation House promotes its businesses by claiming they teach the same techniques as TM and by making false representations concerning the scientific studies directed at TM.

The Foundation now claims that the actions of Thomas Knoles, The Veda Center, and The Meditation House violate a variety of Federal and State Laws.

### III. DISCUSSION

The Second Amended Complaint alleges fourteen separate theories of liability.[3] [Dkt. No. 83.] The Plaintiff recites a short series of factual allegations regarding the Defendants' conduct and websites, and argue that these facts give rise to a series of federal and state law trademark and unfair competition claims. The allegations giving rise to each individual cause of action overlap greatly.

The Plaintiff alleges that The Veda Center, LLC and Thomas Knoles are liable on

---

[3]The First Amended Complaint contained an allegation of Breach of Fiduciary Duty—Count 1. This claim was omitted from the Second Amended Complaint.

thirteen counts and that The Meditation House, LLC is liable as to Counts I–IV and IX–XIII. The Plaintiff also brings a breach of contract claim against Knoles. The Defendants' Motion to Dismiss makes a number of arguments as to each individual allegation. Given the variety of claims, the Court will address the arguments of the parties on a count by count basis.

### A.  Legal Standard for Failure to State a Claim under Rule 12(b)(6)

Fed. R. Civ. P. 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief." The Court may only consider the matters contained within the pleadings. Noble Sys. Corp. v. Alorica Cent., LLC, 543 F.3d 978, 982 (8th Cir. 2008). The Court must accept as true all of the complaint's factual allegations, viewing them in the light most favorable to the plaintiff. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002). To survive a 12(b)(6) motion, the claim "may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 563 (2007). The complaint must also "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Braden v. Walmart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). This "plausibility standard" requires a plaintiff to establish at the pleading stage that "success on the merits is more than a sheer possibility." Id. Therefore, the factual allegations, taken as true, must "be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555. Mere "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

Typically, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). Materials embraced by the pleadings include "documents whose contents are alleged in the complaint, and whose

authenticity nobody questions, but which are not physically attached to the pleading." Kushner v. Beverly Enters., 317 F.3d 820, 831 (8th Cir.2003). In this case the parties have referenced a number of documents outside the pleadings. The Court will address each of these documents as they arise in the scope of the Court's analysis.

### B.  Claim Analysis

At its core, this case is not complicated. The Plaintiff's claims can easily be divided into (1) claims against Knoles for his pre-2005 conduct and use of the "Transcendental Meditation" mark and (2) claims against all Defendants alleging more recent uses of the "Transcendental Meditation" mark in advertising and solicitation of consumers. The "post-2005" actions of the Defendants appear to be attempts at teaching their own brand of "Vedic Meditation" by comparing it with the "Transcendental Meditation" service provided by the Plaintiff. It is clear that trademark law protects a consumer's association of a mark with the identity of a source of a service.  Trademark law does not extend protection to the underlying services or methods of the holder of a mark.

This case, however, is complicated by the nature of the briefing and the Plaintiff's Second Amended Complaint. Essentially, the Defendants' Motions to Dismiss respond to a factually insufficient Complaint/First Amended Complaint as filed by the Plaintiff. The Court allowed the Plaintiff to file a Second Amended Complaint to cure such defects. The Plaintiff, having the benefit of the briefing regarding the Motion to Dismiss, redrafted the claims in a way that attempted to cure both the Courts concerns and respond to the arguments of the Defendants.

The majority of the claims in the Second Amended Complaint set forth allegations referencing 10–15 alleged statements, website advertisements, online references, and emails in which the Defendants attempt to convince consumers that "Vedic Meditation" is the "same as" the "Transcendental Meditation" provided by the Plaintiff. The Plaintiff utilizes these same allegations to make thirteen of its fourteen claims. The Defendants replied to the

Second Amended Complaint by referencing and reasserting their arguments made regarding the original Complaint/First Amended Complaint.  Ultimately, the Defendants argue that the changes found in the Second Amended Complaint do not cure the defects found in the original Complaint/First Amended Complaint.

The end result of this process is a series of briefing on a Motion to Dismiss that is, at best, a maze of cross-references and repeated arguments that tend to make this case far more complicated than necessary.  As such, the Court will analyze the claims in a way that combines related or legally duplicative claims.

## Claims I and III - Service Mark Infringement and Unfair Competition Under 15 U.S.C. § 1114(1); Claim X - Unfair Competition Under Iowa Law; and Claim XI - Service Mark Infringement Under Iowa Code § 548.112

The Plaintiff asserts claims of Service Mark Infringement and Unfair Competition under 15 U.S.C. § 1114.  Given the facts and the pleadings in this case, the elements of these claims are substantially the same.   Additionally, Iowa law concerning service mark infringement is consistent with the Lanham Act.  See Comm. Sav. Bank v. Hawkeye Fed. Sav. Bank, 592 N.W.2d 321, 329–30 (Iowa 1999) (referencing the Lanham Act in analyzing the standard for trademark infringement under Iowa law); Comm. State Bank, Nat. Ass'n v. Comm. State Bank, 758 N.W.2d 520, 526 (Iowa 2008) (noting that "[a]lthough federal trademark law is not controlling in this case, we, as well as other courts, have looked to the Lanham Act for assistance in common law trademark cases").  As such, this Court will analyze the Iowa state law claims under the framework of the Lanham Act.

*Factual Allegations*

The Plaintiff is the exclusive licensee of the federally registered service mark "Transcendental Meditation."  The Plaintiff claims that the Defendants in this case have been using the "Transcendental Meditation" mark to promote the services and techniques of

"Vedic Meditation," which is not associated with "Transcendental Meditation."[4] Further, the Plaintiff claims that, by associating their business with the Maharishi and utilizing similar practices in their training techniques, the Defendants have copied the total image of the Plaintiff's services and are using such tactics to confuse consumers and compete in the meditation market.   The Plaintiff's Second Amended Complaint, [Dkt. No. 83], details allegations against the Defendants as follows:

84.   **Knoles** admitted in an affidavit to using the Transcendental Meditation service mark until 2005 to refer to the type of meditation he taught.

85.   **Knoles** and **The Veda Center** offered to teach a consumer the Transcendental Meditation technique. On a public website at www.thefix.com in March 2012, a consumer stated, "I recently contacted a TM instructor in the Albany NY area. The tuition is $1,500.00! I told him I could not afford that much of a tuition due to financial troubles...." Knoles responded, "Come and see me. Check calendar at: www.thomknoles.com I will be sure you learn."

86. **Knoles** and **The Veda Center** represent to their students that the Vedic Meditation technique and the Transcendental Meditation technique are the same or refer to their meditation interchangeably as Vedic Meditation and Transcendental Meditation.

87. **Knoles** and **The Veda Center** told The Meditation House that the type of meditation they teach "is the same, and has been referred to by him by the terms "Transcendental Meditation" and "Vedic Meditation."

88. **The Meditation House** further claims "Vedic Meditation is the same type of meditation as what the Plaintiff and its affiliates refer to as 'Transcendental Meditation.' Studies of this type of meditation are referred to on the internet, and on websites of the Plaintiff and its affiliates."

89. **The Veda Center** claims that it is charged with carrying on the teaching of Maharishi Mahesh Yogi's Transcendental Meditation instruction. On May 25, 2010 The Veda Center published an article on its website at

---

[4]The Plaintiff does not claim that the use of the phrase "Vedic Meditation" infringes its rights in the "Transcendental Meditation" mark.

www.thevedacenter.com titled "What creates world peace?" in which The Veda Center implied an equivalency between the Vedic Meditation technique and the Transcendental Meditation technique by describing research on the Transcendental Meditation technique, and then claiming that "The T.M. movement is never going to accomplish Maharishi's dream. If they and any life left in them they would have achieved this years ago. The baton has been passed to us."

90. **The Meditation House** claimed on its Facebook advertising page to teach the Transcendental Meditation technique when it posted an article on March 09, 2011 that discussed the David Lynch Foundation's Operation Warrior Wellness program to overcome post-traumatic stress disorder (PTSD) with the Transcendental Meditation technique, and stated that, "If it works this well for our service personnel as they recover from the trauma of war, imagine what it can do for you! Free informational Talk: WED MARCH 24TH. 7PM."

91. **The Meditation House** represented to a consumer named Mr. Robbins (in email correspondence beginning on June 21, 2010 through June 25, 2010) that Vedic Meditation is the same as Transcendental Meditation or used Transcendental Meditation and Vedic Meditation interchangeably.

92. **The Meditation House** refers consumers to studies on the Transcendental Meditation technique to support the alleged efficacy of its Vedic Meditation technique, thereby implying to consumers that Vedic Meditation technique is the Transcendental Meditation technique.

134. **Defendants** represent to consumers in commercial advertising that their Vedic Meditation technique is the same as the Transcendental Meditation technique, thereby suggesting to their consumers that their services are of the same quality as the Foundation's services or that Foundation's services are of a no better quality than the services offered by the Defendant.

246. **Defendants** have directly represented to consumers that their Vedic Meditation technique is the same as the Transcendental Meditation technique. See e.g.,paragraphs 114–120.

247. **Defendants** have indirectly represented to consumers that their Vedic Meditation technique is the same as the Transcendental Meditation technique by, among other ways, citing to scientific studies on the Transcendental Meditation technique to support the efficacy of the Vedic Meditation technique. See e.g., paragraphs 111–114.

[Dkt. No. 83]. The Plaintiff uses these same factual allegations as the basis for Claims I, III, X, and XI. [Dkt. No. 83.]

Knoles concedes that certain of these allegations give rise to a claim under the Lanham Act and, therefore, are not included in the Motion to Dismiss: (1) the pre-2005 representations made on Knoles' website and (2) the representations made by Knoles regarding his qualifications. However, Knoles argues that the remaining allegations fail to plead sufficient facts which would give rise to a claim for Service Mark Infringement or Unfair Competition and should be dismissed. [Dkt. No. 61.] Specifically, Knoles argues that the Plaintiff has failed to allege facts sufficient to show a "use" of the mark in commerce. [Dkt. No. 61 at 15.]

The Veda Center and The Meditation House argue that the Plaintiff has failed to plead sufficient facts to show (1) a "use" in commerce or (2) a "substantial likelihood that ordinary consumers will be confused." [Dkt. No. 60-1 at 10–12, Dkt. No. 62-1 at 6–9.] Further, the Meditation House argues that the Plaintiff is attempting to monopolize the underlying form of meditation by asking this Court to enforce its service mark beyond the scope of established trademark law. [Dkt. No. 60-1 at 12–15.]

*Legal Standard*

Section 1114 of the Lanham Act provides in pertinent part:

(1) Any person who shall, without the consent of the registrant--
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. . .

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114; see also DaimlerChrysler AG v. Bloom, 315 F.3d 932, 936 (8th Cir. 2003). The Plaintiff must first prove that it owns or has rights in a valid, protectable service mark.

Further, "[e]ach provision [of the Lanham Act] requires, as a prerequisite to finding liability, that the defendant 'use in commerce' the protected mark or a colorable imitation thereof." Id.

> The term "use in commerce" means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark. For purposes of this chapter, a mark shall be deemed to be in use in commerce– . . .
>
> (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce, or the services are rendered in more than one State or in the United States and a foreign country and the person rendering the services is engaged in commerce in connection with the services.

15 U.S.C. § 1127.  If the Plaintiff can establish the existence of a valid mark and a "use in commerce" by the defendant, the Court must then determine whether the Defendant's use "'creates a likelihood of confusion, deception, or mistake among an appreciable number of ordinary buyers as to source' of the product or the association between the parties."  Iowa Paint Mfg., Inc. v. Hirshfield's Paint Mfg., Inc., 296 F. Supp. 2d 983, 989 (S.D. Iowa 2003) (quoting Duluth News–Tribune v. Mesabi Publ'g Co., 84 F.3d 1093, 1096 (8th Cir. 1996)). In determining whether there is a likelihood of confusion, the Court considers: (1) the strength of the infringed trademark; (2) the similarity between the plaintiff's and defendant's marks; (3) the competitive proximities of the parties' products; (4) the alleged infringer's intent to confuse the public; (5) the evidence of actual confusion; and (6) the degree of care reasonably expected of potential customers." See Squirt Co. v. Seven-Up Co., 628 F.2d 1086, 1091 (8th Cir. 1980).

*Analysis*

At this stage, the Plaintiff must plead sufficient facts to show that (1) the Plaintiff owns or has protectable rights in the service mark "Transcendental Meditation," (2) the Defendants have used the mark or a colorable imitation thereof in commerce, and (3) that the

Defendants use creates a substantial likelihood that an ordinary consumer would be confused.

It is undisputed that the Plaintiff is the licensee of the valid, federally registered service mark, "Transcendental Meditation." [Dkt. No. 83 at ¶ 11.] The Plaintiff indicates that this mark has obtained incontestable status pursuant to 15 U.S.C. § 1065. [Dkt. No. 83 at ¶ 10.]

The Defendants strongly dispute whether the Plaintiff has adequately plead a "use in commerce" as required by section 1114.[5]  The Plaintiff alleges that the Defendants use the "Transcendental Meditation" service mark to promote their Vedic Meditation teaching business by portraying to prospective consumers that they teach "Transcendental Meditation" through word of mouth or on their website.  The Plaintiff further alleges that the Defendants have used the mark "Transcendental Meditation" in contacting prospective consumers, whether teachers or students, and the Defendants have done so in an attempt to confuse the consumers into thinking they were receiving the services provided by the Plaintiff.  An actual use of the protected mark, combined with the allegations that the Defendants told consumers they would be learning "Transcendental Meditation" would satisfy the SquirtCo. factors and would constitute sufficient factual allegations regarding a likelihood of confusion as to give rise to claims for Trademark Infringement and Unfair Competition at the Motion to Dismiss stage.  628 F.2d at 1091.[6]

However, the bulk of the Plaintiff's claims refer to actions by the Defendants in which the Defendants either claim "Vedic Meditation is the same as Transcendental Meditation" or make references to "Transcendental Meditation" in an attempt to compare their own

---

[5]The Plaintiff's Second Amended Complaint does not include allegations against Knoles concerning his online biography or statements concerning the scientific studies in Counts I and III.

[6]The Defendants have provided a number of Exhibits pertaining to websites, email correspondence, and scientific studies that, though highly relevant at the Summary Judgment stage, are (1) outside the pleadings, (2) not sufficiently embraced by the pleadings, and (3) may not be considered by the Court in deciding the sufficiency of the pleadings for purposes of a Motion to Dismiss under FRCP 12(b)(6).

"Vedic Meditation" services.  A fundamental tenant of trademark law is the understanding that "[a] trademark is not a monopoly on the use of a name or a phrase. Rather, the legal relevance of a trademark is to show the source, identity, sponsorship, or origin of the product." Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc., 815 F.2d 500, 503 (8th Cir. 1987) (citations omitted).

> An imitator may use in a truthful way an originator's trademark when advertising that the imitator's product is a copy so long as that use is not likely to create confusion in the consumer's mind as to the source of the product being sold. . . .   The underlying rationale is that an imitator is entitled to truthfully inform the public that it believes that it has produced a product equivalent to the original and that the public may benefit through lower prices by buying the imitation.

Id. (citations omitted).   "[W]here an imitator lawfully copies another's product, the law allows the imitator to use the originator's trade mark or service mark to inform the public of the source of the copy."  Pebble Beach Co. v. Tour 18 I, Ltd., 942 F. Supp. 1513, 1552 (S.D. Tex. 1996) (citing  Saxlehner v. Wagner, 216 U.S. 375, 376 (1910)).

Here, the Defendants are attempting to provide a meditation service to prospective consumers under the name "Vedic Meditation."  In telling these prospective consumers that their product is "the same as" the Plaintiff's product, the Defendants inherently eliminate any confusion that the Plaintiff might be the source, identity, sponsor, or origin of the product. The allegations in paragraph 89 specifically distinguish the Defendants' services in noting that "the T.M. movement is never going to accomplish the Maharishi's dream. . . . The baton has been passed to us."  In paragraphs 86, 87, 91, 134, and 236 the Plaintiff alleges that the Defendants tell consumers that the services are "the same as" the services of the Plaintiff. Such claims cannot be said to be an attempt to capitalize on the goodwill of the Plaintiff or an attempt to confuse consumers into believing they are receiving the services of the Plaintiff.  To the contrary, such claims specifically inform the consumer, whether teachers or students, that the product is from a source that is distinct from the Plaintiff.

Bolstering this finding is the fact that, in the pleadings and briefing, the Plaintiff

admits that the Defendants' websites contain specific disclaimers which inform consumers that the "Vedic Meditation" service is not associated with the Plaintiff or its "Transcendental Meditation" mark.  While the Plaintiff is correct in arguing that these disclaimers are not dispositive on the issue of confusion or infringement at this stage, the Court notes that the presence of such a disclaimer is further evidence of the Defendants desire to market a similar product under a different name.

Further, many of the allegations fail to recite a use in commerce.  In one instance a consumer used the letters "TM" on a public website.  [Dkt. No. 83 at ¶ 85.]  The Defendants' response to this statement does not contain any reference to "Transcendental Meditation" and does not constitute a use in commerce of the "Transcendental Meditation" mark.  The allegations that the Defendants reference "scientific studies of this type of meditation" is unclear. [Dkt. No. 83 at ¶ 88.]  While these statements appear to be made on the Defendants' websites, they either refer to "meditation" or "Vedic Meditation." [Dkt. No. 83 at 11–12.] The Plaintiff does not point to a use on the Defendants' websites of the "Transcendental Meditation" mark—other than in disclaimers.  The references to the scientific studies are insufficient to constitute a "use in commerce" of the mark, especially considering the allegations do not suggest that the scientific studies actually contain the "Transcendental Meditation" mark.  Rather, the allegations recite that these studies are "on the Transcendental Meditation technique."  [Dkt. No. 83 at 11–13, 19.]

After applying these findings to the Plaintiff's claims, the Court finds that few of the allegations made by the Plaintiff survive the Motion to Dismiss.  The factual allegations that rise above a threadbare recitation of the elements of the claim either (1) read on instances of comparative advertising in which the Defendants inform the consumer that their service is "the same as" or "comparable" to the Plaintiff's service or (2) do not constitute a use in commerce.  The Plaintiff adds threadbare allegations that the Defendants "refer[red] to their meditation interchangeably as Vedic Meditation and Transcendental Meditation" and "used Transcendental Meditation and Vedic Meditation interchangeably" at the end of certain

15

allegations. [See, e.g., Dkt. No. 83 at ¶¶ 86, 91.] This is an attempt to take the allegations from the realm of legitimate, non-infringing, competitive activity, to the realm of Trademark Infringement and Unfair Competition. Combining the permissible actions of the Defendants with a threadbare recitation of the elements of the claim, without more, will not survive a Motion to Dismiss under FRCP 12(b)(6).[7]

As such, the Court finds that the allegations that Knoles used the mark "Transcendental Meditation" to promote his services pre-2005 adequately pleads factual circumstances which would give rise to a claim for Trademark Infringement and Unfair Competition. The Motion to Dismiss is denied with respect to Knoles pre-2005 conduct and granted with respect to the remaining service mark infringement and unfair competition claims.

### Count VI - Contributory Service Mark Infringement Under 15 U.S.C. § 1114(a) - The Veda Center and Thomas Knoles

The Plaintiff asserts claims of Contributory Service Mark Infringement against The Veda Center and Thomas Knoles. [Dkt. No. 83 at 37.]

*Factual Allegations*

The Plaintiff argues that The Veda Center and Thomas Knoles have induced others to use the "Transcendental Meditation" mark either directly or indirectly in a manner which

---

[7]Paragraph 100 of the second amended complaint contains allegations that the Defendants have copied the "total image" of the Plaintiff's technique. This allegation appears to be a remnant of the Plaintiff's Trade Dress Infringement claim found in Claim VIII of the First Amended Complaint. [Dkt. No. 52] This reads on an attempt to claim the functional elements of the technique—20 minutes per day, instruction over four days, one day of introduction and three days of lessons, use of questionnaires. Such attributes are, according to the Plaintiff, an important ingredient in its commercial success. These traits are, therefore, functional and not afforded protection under the Lanham Act. See Gateway, Inc. v. Companion Prods., Inc., 384 F.3d 503, 508–509 (8th Cir. 2004) ("In order to be protected, [the] trade dress must be nonfunctional.")

infringes the Plaintiff's rights in the mark. [Dkt. No. 83 at 39–40.] In support of this claim, the Plaintiff repeats the factual allegations regarding Service Mark Infringement as found in claims I, III, X, and XI. [Dkt. No. 83 at 37–39.] The Plaintiff further alleges:

> 202. The foregoing representations by **Defendants** have induced others, including the Defendant The Meditation House, Christian Bevacqua, Light Watkins, William Dalton, Michael Miller, and Matthew Spangler to use the Transcendental Meditation service mark, either, (I) directly (in the instance of Defendant The Meditation House when it cited to an article discussing the David LynchFoundation's Operation Warrior Wellness program to overcome post-traumatic stress disorder (PTSD) with the Transcendental Meditation technique and stated that "If it works this well for our service personnel as they recover from the trauma of war, imagine what it can do for you! Free informational Talk: WED MARCH 24TH. 7PM."), or (ii) indirectly (in the instances of Christian Bevacqua, Light Watkins, William Dalton, Michael Miller, and Matthew Spangler when they cite to scientific studies and other literature on the Transcendental Meditation technique, which uses the Transcendental Meditation service mark, to support their Vedic Meditation technique) in a manner that is likely to cause confusion, or to cause mistake, or to deceive ordinary consumers as to the source, sponsorship, affiliation, or approval by the Plaintiff and "Transcendental Meditation," and as to the to the origin, sponsorship, or approval of the their services or commercial activities by Plaintiff or "Transcendental Meditation".

> 203. **Knoles** and **The Veda Center** knew or should have known that the representations they made to their students about the identity between the Vedic Meditation technique and the Transcendental Meditation technique or using the Transcendental Meditation service mark to describe their services would be passed on by their students or otherwise cause their students to infringe the Transcendental Meditation service mark.

[Dkt. No. 83 at 39–40.]

The Defendants argue that these allegations fail to set forth a plausible claim upon which relief can be granted. [Dkt. Nos. 61-1, 62-1.] Specifically, Defendants argue (1) that the Plaintiff has failed to show a "use in commerce" as required by the Lanham Act (2) that the Defendants do not have the power to direct the conduct of the alleged "third parties," and (3) the allegations are not specific as to which conduct by the Defendants constitutes

inducement. [Dkt. No. 61-1 at 16–18.]

*Legal Standard*

The Supreme Court of the United States has long recognized, "if a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is contributorily responsible for any harm done as a result of the deceit." Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 854 (1982). In order to establish such a claim, the plaintiff must show that the defendant continued to supply its product to its customers with the knowledge that the customers were engaging in trademark infringement. Georgia-Pacific Consumer Prods. LP v. Myers Supply, Inc., 621 F.3d 771, 774 (8th Cir. 2010).

This analysis involves a two-part inquiry. First, the Plaintiff must prove that the Defendant was supplying its customers with a product, or in this case a service. Second, the Plaintiff must show that the Defendant knew the customer or consumer was engaging in service mark infringement. Id. at 774–75. A showing of actual infringement is a prerequisite to contributory infringement. Georgia-Pacific Consumer Prods. LP v. Myers Supply, Inc., 2009 WL 1850324 at *4 (W.D. Ark. June 26, 2009).

*Analysis*

There is no question that the Defendants were providing services to customers. Therefore, in this case, the Plaintiff must allege facts sufficient to make a plausible claim that Knoles and The Veda Center knew or should have known that their actions were inducing the third-parties to infringe the Plaintiff's "Transcendental Meditation" mark. This includes setting forth a plausible claim that the third-parties have engaged in actual infringement.

The Plaintiff claims that, in using certain studies and articles in their own business and teachings, the Defendants have directly induced customers to infringe the "Transcendental

18

Meditation" mark. [Dkt. No. 83 at 40.] Specifically, the Plaintiff claims that Knoles and The Veda Center induced The Meditation House and other third-parties to use references to articles referencing the success of "Transcendental Meditation" to support the efficacy of its own meditation techniques. [Dkt. No. 83 at 39.] Further, the Plaintiff claims that other third-parties were indirectly induced to infringe by Knoles and The Veda Center's use of scientific studies which, as a result, the third-parties reference on their own websites and in their own businesses. [Dkt. No. 83 at 39.]

The Court has already determined that the majority of the underlying service mark claims fail to set forth facts which would give rise to a plausible claim for service mark infringement. The Court has determined that the only underlying service mark infringement and unfair competition claims that survive relate to Knoles pre-2005 conduct. The remaining allegations have been dismissed and, therefore, similarly fail to set forth factual allegations which would give rise to a plausible claim for contributory infringement. If there is no infringement, there can be no contributory infringement.

The allegations in paragraph 202 and 203 add little to the claims already dismissed by the Court. Paragraph 202 alleges that the Defendants have indirectly induced others by citing "literature on the Transcendental Meditation technique, which uses the Transcendental Meditation service mark." This sets forth allegations of an actual use of the mark, albeit a use in the literature. That said, these allegations further claim that the Defendants cited to the literature "to support their Vedic Meditation technique," thus embodying the same fatal flaw as the previous allegations. These references are used to expressly compare the services of the Defendants and the Plaintiff, not to capitalize on the service mark rights of the Plaintiff. Further, it cannot be said that the Defendants used the mark "in commerce" simply because they "cite" to studies and literature containing the Plaintiff's mark.

The Court finds that the only allegations that set forth facts giving rise to a plausible claim for service mark infringement are those regarding the pre-2005 conduct of Knoles. Accordingly, the Court finds that the allegations regarding the conduct of the

consumers—whether teachers or students—does not set forth sufficient facts as to give rise to a plausible claim for service mark infringement. Without a finding of actual infringement, there can be no contributory infringement.  Georgia-Pacific Consumer Prods. LP, 2009 WL 1850324 at *4.[8]  The Motion to Dismiss with respect to these claims is granted and the contributory service mark infringement claims are dismissed.

### Count II - False Advertising Under 15 U.S.C. § 1125(a) - All Defendants
### Count IX - False Representation Under Iowa Law - All Defendants

The Plaintiff asserts claims of False Advertising under 15 U.S.C. § 1125(a) and claims of False Representation (Fraudulent Misrepresentation) under Iowa common law. The parties address both the Lanham Act and state law claims interchangeably in their briefing on the Motion to Dismiss.  Additionally, in the Second Amended Complaint, the Plaintiff refers to the factual allegations for the False Advertising Claim under 15 U.S.C. § 1125(a) as the basis for its claims for False Representation under Iowa common law. [Dkt. No. 83 at 46–47.]

*Factual Allegations*

The Plaintiff argues that the Defendants have engaged in False Advertising by directing consumers to scientific studies specific to "Transcendental Meditation" and by informing consumers that their meditation techniques are the "same as" those taught by the Plaintiff.  Additionally, the Plaintiff argues that Knoles and The Veda Center make false claims regarding Knoles' expertise. In support of these claims, the Plaintiff sets forth the following factual allegations:

> 111. **Knoles** represented up to at least December 2005 on his website at www.thomknoles.com with respect to his services in commercial advertising that:

---

[8]The remaining pre-2005 claims for service mark infringement and unfair competition against Knoles cannot give rise to a claim for contributory infringement as no party is alleged to have induced Knoles' conduct.

What doe[s] scientific research say about Vedic meditation?
Over 500 scientific research studies conducted during the past 25 years at more than 200 independent universities and research Institutes in 30 countries have shown that this meditation benefits every areas of an individual's life: mind, body, behavior, and environment.

112.   **The Meditation House** claimed on its website at www.themeditationhouse.com that "[a]ccording to scientific studies conducted at over 200 research institutes and universities, a few minutes of Vedic Meditation each day produces a wide range of health benefits," that there are several notable health benefits attributed to the practice of the Vedic Meditation technique, including "reduced risk of heart disease" and "normalization of blood pressure," and that its "claims have been proven by science" in "over 600 published scientific research studies . . . ."

113.   Many students of **Knoles** and **The Veda Center** make the same or similar false claims as **The Mediation House**, which suggests that these Defendants continue to falsely represent that their Vedic Meditation services have been scientifically studied and proven to have no table health benefits.

114.   **The Veda Center** published on May 25, 2010 an article on its website at www.thevedacenter.com titled, "What creates world peace?" In this article, The Veda Center described studies on the Transcendental Meditation technique in support of its services.

115.   **Defendants** represent to consumers that the Vedic Meditation technique and the Transcendental Meditation technique are the same, which, among other things, represents a false equivalency between the respective techniques.

116.   **Knoles** told Jules Green that type of meditation he teaches "is the same, and has been referred to by him by the terms "Transcendental Meditation" and "Vedic Meditation."

117.   Many of students of **Knoles** and **The Veda Center** continue to rely on scientific studies or articles on the Transcendental Meditation technique to support their meditation services, which suggests that these students are being told that the respective meditation techniques are the same. See paragraph 55.

118.   **Knoles** and **The Veda Center** falsely claim on their websites at www.thomknoles.com and www.thevedacenter.com that Maharishi Mahesh Yogi was Knoles' mentor over two decades and that Maharishi Mahesh Yogi

personally instructed him in the Vedic Meditation technique, when, in fact, he was taught the Transcendental Meditation technique by Robert Cranston.

119. **Knoles** and **The Veda Center** falsely claim on their websites at www.thomknoles.com and www.thevedacenter.com that Maharishi Mahesh Yogi personally conferred on Knoles an honorary doctorate, Doctor of Science of Creative Intelligence, from Maharishi European Research University in Switzerland.

120. **Knoles** and **The Veda Center** falsely claim on their websites at www.thomknoles.com and www.thevedacenter.com that Knoles "became an acclaimed teacher of yoga and meditation before the age of twenty" when in fact he didn't even complete his initial training as a teacher until he was twenty years old.

[Dkt. No. 83 at 22–24.] The Plaintiff relies on these same factual allegations in support of Claim IX — False Representation under Iowa law. [Dkt. No. 83 at 46–47.]

The Defendants argue that the complaint concedes that Vedic Meditation and the Transcendental Meditation technique are the "same type" of meditation techniques. [Dkt. No. 60-1 at 18.] The Defendants reference allegations in the First Amended Complaint that acknowledge Knoles was teaching students in the same methods he learned personally from the Maharishi and that he informed consumers they would be taught the "same type" of meditation techniques as those taught by the Plaintiff. [Dkt. No. 60-1 at 18–19.] In the Second Amended Complaint, the Plaintiff incorporates by reference factual allegations that Knoles has copied much of the meditation techniques taught by the Plaintiff. [Dkt. No. 83 at ¶ 106.] The Defendants argue that, in doing so, the Plaintiff is admitting the truth of the statements relied on for the false and deceptive advertising claims. The Veda Center argues that the false advertising claims against The Veda Center must be dismissed as the Plaintiff failed to make any factual allegations of false advertising after July 2010, the date The Veda Center came into existence.[9] [Dkt. No. 62-1 at 9.]

_____

[9]The Court finds that this argument is unpersuasive in light of the Plaintiff's allegations made in paragraphs 117–20 of the Second Amended Complaint.

In response, the Plaintiff argues that the Defendants have made "literal and express" representations about their services that are false or misleading. [Dkt. No. 72-1 at 16.] Specifically, the Plaintiff argues that the Defendants' references to the scientific studies are false or misleading in that they confuse the consumer into believing the services offered by the Defendants are equivalent to those offered by the Plaintiff. [Dkt. No. 72-1 at 17.] Further, the Plaintiff points to allegations in the amended complaint which discuss the differences between the service provided by the Defendants and those provided by the Plaintiff. [Dkt. No. 72-1 at 17.]

The Defendants argue that the Second Amended Complaint does not cure the defects outlined in their original motion and, therefore, stand on their original arguments. [Dkt. No. 85-1.]

*Legal Standard*

With respect to the False Advertising claims under the Lanham Act, 15 U.S.C. Section 1125(a), provides in pertinent part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).  The Eighth Circuit Court of Appeals has provided guidance as to the specific elements of a false advertising claim under the Lanham Act.

> To establish a claim under the false or deceptive advertising prong of the Lanham Act, Plaintiff must prove:
>
> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

United Indus. Corp. v. Clorox Co., 140 F.3d 1175, 1180 (8th Cir. 1998).

> The false statement necessary to establish a Lanham Act violation generally falls into one of two categories: (1) commercial claims that are literally false as a factual matter; and (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers.

Id.

With respect to the state law claims, it is unclear to the Court whether the Plaintiff is relying on Iowa law regarding fraud/fraudulent misrepresentation or simply duplicating the Lanham Act claim for false advertising.  Under Iowa law, the elements of fraud/fraudulent misrepresentation include:

> "(1) defendant made a representation to the plaintiff, (2) the representation was false, (3) the representation was material,(4) the defendant knew the representation was false, (5) the defendant intended to deceive the plaintiff, (6) the plaintiff acted in reliance on the truth of the representation and was justified in relying on the representation, (7) the representation was a proximate cause of plaintiff's damages, and (8) the amount of damages."

Waldner v. Carr, 618 F.3d 838, 847 (8th Cir. 2010) (citing Gibson v. ITT Hartford Ins. Co., 621 N.W.2d 388, 400 (Iowa 2001)).

*Analysis*

As an initial matter, Knoles concedes that the allegations regarding his expertise, paragraphs 118–20 in the Second Amended Complaint, set forth factual allegations which, if true, would give rise to a plausible claim for False Advertising. The Plaintiff added The Veda Center in these allegations in the Second Amended Complaint. As such, the Court finds that the False Advertising claims found in paragraphs 118–20 against Thom Knoles and The Veda Center set forth plausible claims for relief.

The Plaintiff's claims of "False Representation" under Iowa common law present a series of problems. First, to the extent Iowa law recognizes a cause of action duplicative or consistent with the Lanham Act, those claims will be treated identical to the False Advertising claims under 15 U.S.C. § 1125(a). However, the Plaintiff's Second Amended Complaint and briefing are not clear as to which state law cause of action they are setting forth. A claim for fraud/fraudulent misrepresentation under Iowa law requires "(1) defendant made a representation to the plaintiff . . . (5) the defendant intended to deceive the plaintiff . . . (6) the plaintiff acted in reliance on the truth of the representation and was justified in relying on the representation . . ." Waldner, 618 F.3d at 847. The allegations in the complaint revolve around statements and representations made by the Defendants to consumers. There are no allegations that the Defendants made representations to the Plaintiff with the intent to deceive the Plaintiff. As such, the Court finds that the Plaintiff has failed to meet its burden in setting forth a plausible claim for relief for fraud/fraudulent misrepresentation under Iowa law.

The remaining allegations revolve around the Defendants' alleged references to scientific studies and statements that the meditation techniques of the Defendant are the "same as" meditation techniques taught by the Plaintiff. [Dkt. No. 83 at ¶¶ 111–17.] The Plaintiff alleges that the Defendants inform consumers that "Vedic Meditation" is the same

as "Transcendental Meditation." The complaint alleges that such comparisons are either literally untrue or are highly misleading because the Defendants do not engage in the same standards and processes as the Plaintiff. The Plaintiff alleges that the Defendants' consumers repeat this information on their own websites and in their own practices. The Plaintiff alleges that these false allegations—especially those regarding Knoles' expertise—are material because they cause consumers, such as Jules Green, to seek the services of the Defendants. Further, the Defendants cause these allegedly false statements to enter interstate commerce by making these comparisons on their websites and in their solicitation of business.[10] Finally, the Plaintiff alleges that these false statements damage the Plaintiff by diverting consumers to the Defendants' businesses.

Knoles was taught by the Maharishi and he is versed in the practices and methods of the Plaintiff. As such, his students and consumers would also, arguably, be similarly trained. However, Knoles association with the Maharishi and organizations created by the Maharishi ended in 1997. The Plaintiff alleges that the Plaintiff engages in significant quality control measures which distinguish its meditation services from those of any other provider. Knoles would not have been exposed to these quality control procedures after 1997 and, therefore, any statement that the Defendants' meditation techniques are the "same as" the Plaintiff's techniques are false or misleading.

The Court finds that the allegations set forth sufficient facts which would give rise to a plausible claim for false advertising under the Lanham Act. The Defendants' comparison of services saves the Defendants from liability in the service mark infringement and unfair competition claims because the Defendants are permitted to assert that they believe their services are of equal quality to that of the Plaintiff without running afoul of the Lanham Act. However, such a comparison is insufficient to overcome a claim of false advertising where

---

[10]A "use in commerce" as detailed in the service mark infringement and unfair competition analysis is distinct from "causing the false statement to enter interstate commerce." The former focuses on the use of the actual service mark and can be overcome in instances of comparative advertising. The latter focuses on the use of the allegedly false statement.

the Plaintiff sets forth facts which plausibly allege the false or misleading nature of the claims.

The Motion to Dismiss is denied with respect to the false advertising claims and is granted with respect to the claims of false representation under Iowa law.

## Count VII - Secondary Liability for False Advertising Under 15 U.S.C. § 1125(a) - The Veda Center and Thomas Knoles

The Plaintiff sets forth a claim for Secondary Liability for False Advertising under the Lanham Act against The Veda Center and Thom Knoles. [Dkt. No. 83 at 41.] The Plaintiff does not provide authority to support the existence of such a claim under the Lanham Act. [Dkt. No. 72-1 18–20.] The Plaintiff simply sets forth case law regarding fraud and inducement generally.  [Dkt. No. 72-1 18–20.]


*Legal Standard*

In Inwood Labs., Inc., the Supreme Court recognized that the Lanham Act authorized a claim for secondary liability under the Lanham Act.  456 U.S. 853–54.  Further, "[i]t is clear that the Lanham Act does not, by its plain terms, limit liability to a direct infringer, but allows for secondary liability." Goddard, Inc. v. Henry's Foods, Inc., 291 F. Supp. 2d 1021, 1036 (D. Minn. 2003).  Other courts have recognized a specific claim for contributory liability for false advertising under the Lanham Act.

> Contributory false designation of origin and false advertising are actionable. See Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P., 380 F.3d 126, 133 (2d Cir. 2004); (reinstating claim for contributory false advertising after holding that the lower court erred in dismissing the direct claim for false advertising);  Fare Deals Ltd. v. World Choice Travel.Com, 180 F. Supp. 2d 678, 686–87 (D. Md. 2001) (citation omitted) (stating that contributory liability "applies equally to both infringement provisions of the Lanham Act");  Grant Airmass Corp. v. Gaymar Indus., Inc., 645 F. Supp. 1507, 1511–12 (S.D.N.Y. 1986) (noting that Lanham Act claims sounding in contributory liability "survive summary judgment so long as the evidence viewed most favorably toward [the plaintiff] supports a finding" that the

defendant alleged to be contributorily liable could have anticipated the other defendant's wrongdoing).

Coach, Inc. v. Farmers Market & Auction, 881 F. Supp. 2d 695, 704 (D. Md. 2012).  This Court agrees that the principles of contributory infringement established in Inwood Labs., Inc. are consistent with allowing a claim for contributory false advertising under the Lanham Act.

Consistent with the principles set forth in Georgia-Pacific Consumer Prods. LP, in order to establish such a claim for secondary liability for false advertising, the plaintiff must show that the defendant continued to supply its product or service to its customers with the knowledge that the customers were engaging false advertising.  See 621 F.3d at 774.  A showing of actual false advertising is a prerequisite to contributory infringement. See Georgia-Pacific Consumer Prods. LP, 2009 WL 1850324 at *4.

*Analysis*

The Court has herein determined that the Plaintiff has pled sufficient facts as to give rise to a plausible claim of false advertising against all Defendants.  This includes an underlying claim of false advertising against The Meditation House.  The Plaintiff reiterates the false advertising claims and argues that,

> The foregoing representations by Defendants have induced others, including the Defendant The Meditation House, through its owner Green, Christian Bevacqua, Light Watkins, William Dalton, Michael Miller, and Matthew Spangler to make false or misleading descriptions of fact, or a false or misleading representations of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics and qualities of their own and the Defendants' services.

[Dkt. No. 83 at ¶ 214.] The Court finds that these claims are consistent with the underlying false advertising claims and, therefore, finds that the Plaintiff has pled sufficient facts as to give rise to a plausible claim that the Defendants' customers have engaged in false advertising.

The Plaintiff next alleges that the Defendants knew they were engaging in false

advertising and knew or should have known that using such false and misleading statements would induce their customers to do so as well.  In <u>Merck Eprova AG v. Gnosis S.p.A.</u>, the court held that the defendant's use of false advertising induced its consumers to "follow its lead" in the false advertising.  901 F. Supp. 2d 436, 456 (S.D.N.Y. 2012).  The Court found evidence that the customers named products in the same false and misleading way as the defendant.  <u>Id.</u>  The Plaintiff has made similar factual allegations in this case.  The Plaintiff points to claims made by the Defendants regarding the similarity between the meditation services of the parties.  The Plaintiff sets forth facts alleging that these claims are false, misleading, and untrue.  Finally, the Plaintiff sets forth sufficient factual allegations to show that the customers of Knoles and The Veda Center use these same statements, comments, and comparisons in the advertising of their own businesses.

The Court finds that the Plaintiff has set forth sufficient facts which would give rise to a plausible claim for contributory false advertising under the Lanham Act.  The Motion to Dismiss is denied with respect to the contributory false advertising claims.

### Count IV - Unfair Competition and Passing Off Under 15 U.S.C. § 1125(a) - All Defendants

The Plaintiff sets forth claims of "Passing Off" under the Lanham Act against all Defendants. [Dkt. No. 83 at 29–34.]

*Factual Allegations*

The Plaintiff argues that the Defendants are passing off their meditation services as those of the Plaintiff. [Dkt. No. 72-1 at 18.]

155. **Defendants** use the Transcendental Meditation service mark to promote their services.

156. **Knoles** admitted in an affidavit to using the Transcendental Meditation service mark until 2005 to refer to the type of meditation he taught.

157. **Knoles** and **The Veda Center** offered to teach a potential customer the Transcendental Meditation technique on a public website at www.thefix.com in March 2012. The potential customer stated on the website that "I recently contacted a TM instructor in the Albany NY area. The tuition is $1,500.00! I told him I could not afford that much of a tuition due to financial troubles...." Knoles responded, "Come and see me. Check calendar at: www.thomknoles.com I will be sure you learn."

158. **Knoles** and **The Veda Center** represent to their students that the Vedic Meditation technique and the Transcendental Meditation technique are the same or refer to their meditation interchangeably as Vedic Meditation and Transcendental Meditation.

159. **Knoles** and **The Veda Center** told Green that type of meditation they teaches "is the same, and has been referred to by him by the terms "Transcendental Meditation" and "Vedic Meditation."

160. Green, who is a student of **Knoles** and **The Veda Center**, responded to an interrogatory that asked for the identify of each scientific study conducted on Vedic Meditation by stating, "Vedic Meditation is the same type of meditation as what the Plaintiff and its affiliates refer to as 'Transcendental Meditation.' Studies of this type of meditation are referred to on the internet, and on websites of the Plaintiff and its affiliates."

161. **The Veda Center** claims that it is charged with carrying on the teaching of Maharishi Mahesh Yogi's Transcendental Meditation instruction. On May 25, 2010 The Veda Center published an article on its website at www.thevedacenter.com titled "What creates world peace?" in which The Veda Center implied an equivalency between the Vedic Meditation technique and the Transcendental Meditation technique by describing research on the Transcendental Meditation technique, and then claiming that "The T.M. movement is never going to accomplish Maharishi's dream. If they and any life left in them they would have achieved this years ago. The baton has been passed to us."

162. **The Meditation House** claimed on its Facebook advertising page to teach the Transcendental Meditation technique when it posted an article on March 09, 2011 that discussed the David Lynch Foundation's Operation Warrior Wellness program to overcome post-traumatic stress disorder (PTSD) with the Transcendental Meditation technique, and stated that, "If it works this well for our service personnel as they recover from the trauma of war, imagine

what it can do for you! Free informational Talk: WED MARCH 24TH. 7PM."

163. **The Meditation House** represented to Robbins (in email correspondence beginning on June 21, 2010 through June 25, 2010) that Vedic Meditation is the same as Transcendental Meditation and used Transcendental Meditation and Vedic Meditation interchangeably.

164. **The Meditation House** refers consumers to studies on the Transcendental Meditation technique to support the alleged efficacy of its Vedic Meditation technique.

165. **Defendants** are passing off their Vedic Meditation services as being those offered by the Foundation under the Transcendental Meditation service mark by using the Transcendental Meditation service mark to promote their services in a manner that is likely to cause confusion, or to cause mistake, or to deceive ordinary consumers as to the source, sponsorship, affiliation, or approval of Defendants with the Plaintiff and "Transcendental Meditation," and as to the to the origin, sponsorship, or approval of the Defendants' services or commercial activities by Plaintiff or "Transcendental Meditation".

The Defendants argue that they do not use any imitation of the Plaintiff's mark to sell their services. [Dkt. No. 60-1 at 16.] Further, the Defendants argue that they unambiguously offer "Vedic Meditation" services and that their website expressly disclaims any association with the Plaintiff. [Dkt. No. 60 at 16.]

*Legal Standard*

"Among other things, the [Lanham Act] prohibits 'passing off' by a tradesman i.e., selling another's goods as those of the trademark owner, by use of the owner's mark." Coca-Cola v. Stewart, 621 F.2d 287, 290 (8th Cir. 1980) (citation omitted) "[I]t is well-established in this Circuit that 'palming off' (also known as 'passing off') 'occurs where a company sells its goods or services under the pretense that they are the goods or services of another.'" Sam's Riverside, Inc. v. Intercon Solutions, Inc., 790 F. Supp. 2d 965, 990 (S.D. Iowa 2011) (citing DaimlerChrysler AG, 315 F.3d at 937).

*Analysis*

The Plaintiff's claims for Passing Off pursuant to 15 U.S.C. § 1125(a) are nearly identical to the claims made in the Service Mark Infringement and Unfair Competition claims.  The Plaintiff uses the identical factual allegations in claiming that the Defendants have attached the Plaintiff's "Transcendental Meditation" mark to the Defendants' services in order to confuse consumers or "pass off" the Defendants' services as though they are the service of the Plaintiff.

The Court has already determined that, other than the allegations regarding Knoles pre-2005 activities, the Plaintiff has failed to set forth factual allegations which would establish a plausible claim for service mark infringement and unfair competition.  These claims for "passing off" are no different.  The allegations fail in one of the following ways; (1) they fail to set forth sufficient factual allegations that Defendants actually used the "Transcendental Meditation" mark in any way, (2) they fail to set forth sufficient factual allegations that the Defendants used the mark in commerce, or (3) the facts reveal legal competition in comparing the services of the Plaintiff to the services provided by the Defendants.

The Defendants are not "selling their [meditation services] as those of the trademark owner, by use of the owner's mark."  Coca-Cola Co., 621 F.2d at 290.  To the contrary, the pleadings reveal the Defendants' efforts to compare the two services to the public, disclaim association with the Plaintiff, and actively attempt to establish their own brand of meditation services.

The "passing off" claims are substantially duplicative of the service mark infringement and unfair competition claims.  The Court finds that the Plaintiff has properly pled sufficient facts to give rise to a plausible claim for "passing off" against Knoles for his pre-2005 activities.  However, the Plaintiff has failed to plead sufficient facts to give rise to a plausible claim for "passing off" in the remainder of the allegations. The Motion to Dismiss with respect to these claims is denied with respect to Knoles pre-2005 activities, and granted

with respect to the remaining allegations.

## Count VIII - Contributory Liability for Unfair Competition and Passing Off Under 15 U.S.C. § 1125(a) - The Veda Center and Thomas Knoles

The Plaintiff asserts a claim for Contributory Liability for Passing Off under the Lanham Act against The Veda Center and Knoles. [Dkt. No. 83 at 43.] The allegations found in this claim are almost identical to those in the Plaintiff's claim for Contributory Service Mark Infringement and Unfair Competition.  Further, the Plaintiff does not provide specific authority allowing for a cause of action for Contributory Liability for "Passing Off."

*Legal Standard*

The Court will analyze this claim under the same framework as the claim for Contributory Liability for Service Mark Infringement and Unfair Competition.

*Analysis*

The Court finds that the only allegations that set forth facts giving rise to a plausible claim for "passing off" are those regarding the pre-2005 conduct of Knoles.  Accordingly, the Court finds that the allegations regarding the conduct of the consumers—whether teachers or students—does not set forth sufficient facts as to give rise to a plausible claim for passing off and unfair competition**.**  Without a finding of actual infringement, there can be no contributory infringement.  <u>Georgia-Pacific Consumer Prods. LP</u>, 2009 WL 1850324 at *4. The Motion to Dismiss with respect to these claims is granted and the contributory liability for passing off claims are dismissed.

## Count V - Service Mark Dilution Under 1125(c);  Count XII - Service Mark Dilution Under Iowa Law - All Defendants

The Plaintiff asserts claims of Service Mark Dilution pursuant to 15 U.S.C. section 1125(c). [Dkt. No. 83 at 34.] The Plaintiff also asserts claims for Service Mark Dilution

pursuant to Iowa Code section 548.113. [Dkt. No. 83 at 49.] The parties argue these claims interchangeably and do not provide any case law applying Iowa Code Section 548.113. Further, other federal Courts have analyzed a "trademark dilution" claim pursuant to Iowa Code Section 548.113 under the Lanham Act framework.  PSK, LLC v. Hicklin, 757 F. Supp. 2d 836, 871 (N.D. Iowa 2010) ("The parties cite no case applying Section 548.113, and the court has found none. However, the statute—and Plaintiff's claim thereunder—is clearly directed at trademark dilution.") As such, this Court will analyze the Plaintiff's Service Mark Dilution claims under the federal framework.

*Factual Allegations*

The Plaintiff argues that the alleged actions of the Defendants constitute Service Mark Dilution. The Plaintiff argues that the "Transcendental Meditation" mark is famous and that the Defendants' use of the mark in selling its own meditation techniques dilutes the distinctive quality of the mark and lessens the capacity of the mark to identify and distinguish services offered by the Plaintiff. [Dkt. No. 83 at 36.]

182. **Defendants** are direct competitors with the Foundation in offering in-person meditation instruction to the general public.

183. **Defendants** purposefully use the Transcendental Meditation service mark in a generic or descriptive sense in an effort to destroy the source identifying function of the Transcendental Meditation service mark, including by defining, in the disclaimers on their websites, the Transcendental Meditation service mark according to dictionary definitions of the individual words, "its service mark "Transcendental Meditation" (the common words "transcendental" and "meditation" as defined in Webster's Dictionary but given an initial capital)."

184. **Defendants** purposefully interchange Vedic Meditation with Transcendental Meditation indicating that the respective meditation techniques are the same.

185. **Defendants** purposefully cite to scientific studies on the Transcendental Meditation technique to support the efficacy of their Vedic Meditation technique to further erode the source identifying function of the Transcendental Meditation service mark.

186. Many students of the **Defendants** rely on scientific studies on the Transcendental Meditation technique to support the efficacy of the Vedic Mediation technique.

187. **The Meditation House** represented to Mr. Robbins that Vedic Meditation is the same as Transcendental Meditation and used Transcendental Meditation and Vedic Meditation interchangeably indicated by Mr. Robbins response to The Meditation House that, "I would like to become a teacher myself as where I live not a lot of people to tm . . ."

[Dkt. No. 83 at 34–36.]

The Defendants argue that (1) they have not made "use in commerce" of the "Transcendental Meditation" mark, and (2) that there is no likelihood that consumers would confuse the source of meditation services.

*Legal Standard*

15 U.S.C. Section 1125(c) provides in pertinent part:

(c) Dilution by blurring; dilution by tarnishment
    (1) Injunctive relief
    Subject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.
    . . .
    (3) Exclusions
    The following shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection:
        (A) Any fair use, including a nominative or descriptive fair use,

35

or facilitation of such fair use, of a famous mark by another
person other than as a designation of source for the person's own
goods or services, including use in connection with--

(I) advertising or promotion that permits consumers to
compare goods or services; or

(ii) identifying and parodying, criticizing, or commenting
upon the famous mark owner or the goods or services of
the famous mark owner.

(B) All forms of news reporting and news commentary.

(C) Any noncommercial use of a mark.

To establish a claim for service mark dilution under the Lanham Act, the Plaintiff
must show "(1) its mark is famous, (2) the defendant began using the mark after plaintiff's
mark became famous, and (3) that defendant's mark dilutes the distinctive quality of
plaintiff's mark by causing consumers to connect plaintiff's mark with different products."
Teter v. Glass Onion, Inc., 723 F. Supp. 2d 1138, 1157 (W.D. Mo. 2010) (citing Luigino's
Inc. v. Stouffer Corp., 170 F.3d 827, 832 (8th Cir. 1999)). In PSK LLC, the Court described
a significant requirement for a Dilution claim under the Lanham Act.

"Dilution occurs when consumers associate a famous mark with a new
product." Luigino's, 170 F.3d at 833. "Normally, the doctrine applies in cases
where similar marks are used on dissimilar goods." Id. (quoting
Pro–Phy–Lac–Tic Brush Co. v. Jordan Marsh Co., 165 F.2d 549, 553 (1st Cir.
1948)). Therefore, courts typically hold that a dilution claim fails where the
parties are competitors who sell similar goods or services. See Sensient Tech.
Corp. v. SensoryEffects Flavor Co., 613 F.3d 754, 771 n. 4 (8th Cir. 2010)
(Colloton, J., concurring in the judgment in part) (concurring in the dismissal
of a claim under a Missouri anti-dilution statute "because this is a dispute
between competitors who sell similar goods"); Luigino's, 170 F.3d at 833
(affirming summary judgment in favor of the defendant on plaintiff's dilution
claim where both parties marketed low-fat frozen entrees); see also McCarthy
24:74 (opining that "antidilution law is out of its proper place in a case of
competing parties").

PSK, LLC, 757 F. Supp. 2d at 871–72.

*Analysis*

36

In <u>PSK, LLC</u>, the Court dismissed the Dilution claims between a company that "manufacture[d] garage doors and related products" and a company that was a "residential installation and repair business for garage doors."  <u>Id.</u> at 847–48.  The Court reasoned that "[i]n light of the fact that the parties are competitors who sell similar goods and services, Plaintiff's state law dilution claim fails."  <u>Id.</u>  at 872.

The parties in this case are, similarly, competitors.  The Plaintiff sets forth in the pleadings that the "Defendants are direct competitors with the Foundation in offering in-person meditation instruction to the general public." [Dkt. No. 83 at ¶ 182.] In fact, a number of the assertions found in the factual allegations describing the "wrongful conduct" of the Defendants suggest that not only does the Plaintiff acknowledge the competitive nature of the services offered, but also claims that the services offered are so close as to easily confuse consumers.

The Plaintiff is required to set forth facts that would give rise to a plausible claim for Service Mark Dilution under the Lanham Act and Iowa Code Section 548.113.  In this case, the parties are competitors who sell similar services and, therefore, the dilution claims fail.  The Motion to Dismiss with respect to these claims is granted and the dilution claims under both the Lanham Act and Iowa law are dismissed.

### Count XIII - Unjust Enrichment Under Iowa Law - All Defendants

The Plaintiff asserts claims of Unjust Enrichment under Iowa Law against all Defendants.  These claims rely on the factual allegations made in claims I–XII as the basis for the actions underlying the unjust enrichment.  Further, the Plaintiff specifically cites Iowa Code Section 548.113— the Dilution statute —as a basis for these claims.  [Dkt. No. 83 at ¶ 263.]

*Factual Allegations*

The Plaintiff alleges that the Defendants' use of the "Transcendental Meditation"

mark, the false advertising to consumers, and the remaining allegations outlined in the pleadings give rise to a claim for unjust enrichment under Iowa Law.  The Plaintiff claims that these actions by the Defendants have deprived the Plaintiff's business of revenue which would have been derived from consumers interested in learning the "Transcendental Meditation" technique.

> 262. The Foundation incorporates by reference paragraphs 1-260 of this Complaint as set forth in full here.

> 263. This claim arises under Iowa Code § 548.113.

> 264. This Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367(a).

> 265. **Defendants** are deriving revenue from consumers interested in learning the Transcendental Meditation technique by, among other things, representing that their Vedic Meditation technique is the same. See e.g., paragraphs 114-120.

> 266. On the basis of the foregoing paragraphs, the Defendants' acts constitute unjust enrichment of the Defendants at the expense of the Foundation.

[Dkt. No. 83 at 49–50.]

The Defendants argue that the Unjust Enrichment claim should be dismissed as the Plaintiff "fails to sufficiently allege any [underlying] claims" against the Defendants. [Dkt. No. 60-1 at 20, Dkt. No. 61-1 at 18, Dkt. No. 62-1 at 14–15.]

*Legal Standard*

Under Iowa Law, "[t]he doctrine of unjust enrichment is based on the principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation." State ex. rel. Palmer v. Unisys Corp., 637 N.W.2d 142, 154 (Iowa 2001) (citing Credit Bureau Enters., Inc. v. Pelo, 608 N.W.2d 20, 25 (Iowa 2000)).  "To recover for unjust enrichment [under Iowa law], [the

plaintiff] must show: '(1) [the defendant] was enriched by the receipt of a benefit; (2) the enrichment was at the expense of [the plaintiff]; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances.'" <u>Lakeside Feeders, Inc. v. Producers Livestock Mktg. Ass'n</u>, 666 F.3d 1099, 1112 (8th Cir.2012) (quoting <u>State ex rel. Palmer</u>, 637 N.W.2d at 149). "The benefit need not 'be conferred directly by the plaintiff[s],' instead, '[t]he critical inquiry is that the benefit received be at the expense of the plaintiff[s].'" <u>Brown v. Kerkhoff</u>, 279 F.R.D. 479, 489 (S.D. Iowa 2012) (quoting <u>State ex rel. Palmer</u>, 637 N.W.2d at 155).

*Analysis*

The Court has determined that certain of the Plaintiff's underlying claims adequately set forth factual allegations which give rise to a plausible claim for relief—Counts I, III, IV, X, and XI against Knoles for his pre-2005 conduct and Counts II and VII against all Defendants for allegations surround false advertising and contributory false advertising. The Plaintiff sets forth that, in each of these claims, the Defendants have derived revenue for meditation services at the expense of the Plaintiff. Further, the Plaintiff asserts that these actions have unjustly diverted consumers from their product to the products of the Defendants and that such benefit was realized at the expense of the Plaintiff's business.

The Court finds that the Plaintiff has adequately pled facts which set forth a plausible claim for unjust enrichment under Iowa Law. The Motion to Dismiss is denied with respect to the unjust enrichment claims.

## Count XIV - Breach of Contract Under Iowa Law - Thomas Knoles

The Plaintiff asserts a claim of Breach of Contract under Iowa Law against Knoles. This claim revolves around the contract signed by Knoles in 1972. [Dkt. No. 83 at 50.]

*Factual Allegations*

The Plaintiff alleges that Knoles signed a contract in 1972 that required him to use the teachings and lessons of the Maharishi only as a teacher–employee of an organization authorized by the Maharishi. [Dkt. No. 72-1 at 7, Dkt. No. 83 at 50–51.] The Plaintiff argues that it is either the actual party to the contract, or the intended third-party beneficiary of the contract and, therefore, is entitled to make a claim on the breach of the contract. [Dkt. No. 72-1 at 9.] With respect to the statute of limitations, the Plaintiff argues that any ambiguity in the date of breach, sometime between 1997 and 2003, should be resolved in favor of the Plaintiff at this stage. [Dkt. No. 72-1 at 8–9.] In the Second Amended complaint, the Plaintiff specifically argues,

> 270. In consideration for being trained and authorized to teach the TM technique, **Knoles** entered into a contract with Maharishi Mahesh Yogi and the organizations he founded or otherwise authorized. One of those organizations is the Foundation. See Exhibit C.

> 271. Alternatively, The Foundation, as the U.S. organization responsible for teaching the Transcendental Meditation technique (and with exclusive rights to enforce the TM mark), was and is an intended beneficiary of the contract between **Knoles** and the organizations authorized by Maharishi Mahesh Yogi.

> 272. **Knoles** breached that contract by disclosing to others (including the other Defendants) confidential business information which provided authorized organizations a competitive edge.

> 273. **Knoles** further breached that contract by using confidential business information which provided authorized organizations a competitive edge by teaching meditation outside authorized organizations at the expense of such organizations, including the Foundation.

[Dkt. N0. 83 at 50–51.]

Knoles argues that the breach of contract claim fails to set forth plausible facts upon which relief can be granted because the Plaintiff is not a party to the contract nor is it an intended third-party beneficiary of the contract. [Dkt. No. 76 at 1.] Further, in the event that the Court finds the contract is enforceable by the Plaintiff, Knoles argues that the claim is

time barred because the Plaintiff's pleadings set forth that the breach occurred in 1997 and the statute of limitations for such a claim is ten years. [Dkt No. 61-1 at 6–7.]

*Legal Standard*

Under Iowa Law, the following elements must be proven for a breach of contract claim;

> (1) the existence of a contract; (2) the terms and conditions of the contract; (3) that [plaintiff] has performed all the terms and conditions required under the contract; (4) [that] defendant[ ] breach[ed] ... the contract in some particular way; and (5) that plaintiff has suffered damages as a result of the breach.

Molo Oil Co. v. River City Ford Truck Sales, Inc., 578 N.W.2d 222, 224 (Iowa 1998) (citing Iowa–Illinois Gas & Elec. Co. v. Black & Veatch, 497 N.W.2d 821, 825 (Iowa 1993)).

With respect to whether a third-party beneficiary exists, Iowa courts follow the Restatement (Second) of Contracts.

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
> > (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or
> > (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
>
> (2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

RPC Liquidation v. Iowa DOT, 717 N.W.2d 317, 319 (2006) (citing Restatement (Second) of Contracts § 302, at 439–40 (1981)).  Further, Iowa courts have noted that "the primary question ... [is] whether the contract manifests an intent to benefit a third party." Id. at 319–20 (quoting Midwest Dredging Co. v. McAninch Corp., 424 N.W.2d 216, 224 (Iowa 1988)).

Iowa law requires that all claims based on a breach of written contract be brought

41

within ten years of the accrual of the cause of action.  Iowa Code § 614.1(4) (2013).  "The general rule is that a cause of action accrues when the aggrieved party has a right to institute and maintain a suit." Diggan v. Cycle Sat, Inc., 576 N.W.2d 99, 102 (Iowa 1998) (quoting Sandbulte v. Farm Bureau Mut. Ins. Co., 343 N.W.2d 457, 462 (Iowa 1984)).  "In the case of a contract dispute, that right accrues and the limitations period begins running upon breach of the contract." Id. (citing Brown v. Ellison, 304 N.W.2d 197, 200 (Iowa 1981)).

*Analysis*

As an initial matter, the contract at issue has been attached as part of the pleadings. [Dkt. No. 83 at 61, (Exhibit C).] The Court finds that the parties each reference the contract without dispute as to its existence and that the contract is properly attached to the Second Amended Complaint. [Dkt. No. 61-1 at 6, Dkt. No. 83 at 61, (Exhibit C).] The parties simply dispute the enforceability of the contract.  As such, the Court finds that the contract is "necessarily embraced by the pleadings." Piper Jaffray Cos. v. Nat'l Union Fire Ins. Co., 967 F.Supp. 1148, 1152 (D. Minn. 1997).  The Court will consider the contract for purposes of the Motion to Dismiss.

The contract is an agreement between the Maharishi and Knoles.  In the contract, Knoles agrees to keep secret the teachings of the Maharishi and work exclusively for SIMS in exchange for learning the methods and teachings of the Maharishi. [Exhibit C.] The contract also reads, "should I ever cease to teach in SIMS or other organizations **founded by you** for the purpose of teaching Transcendental Meditation, I may be restrained by appropriate process from using this secret Teaching of Transcendental Meditation imparted to me."  [Exhibit C (emphasis added).]

The Plaintiff is clearly not an express party to the contract.  The Plaintiff came into existence in 1993, over 20 years after this contract was signed between Knoles and the Maharishi.  In order to assert rights under this contract, the Plaintiff must show that it is an intended third-party beneficiary of the contract.  The multiple references in the contract to

SIMS and "other organizations founded by you" suggests an intent to confer rights on third-parties.   In particular, the contract contemplates Knoles work for SIMS, but also implicates the potential that Knoles would work for other organizations founded by the Maharishi. These parties benefit from Knoles exclusive teaching agreement and, as the contract suggests, these parties would be injured by Knoles breach of the agreement.

Therefore, in order to be a third-party beneficiary of this contract, the Plaintiff must show that it is an "organization founded by the Maharishi."  Despite not being named in the contract, being founded 20 years after the contract was entered, and providing little evidence to support the claim that the organization was founded by the Maharishi, the Plaintiff claims that it is the third-party beneficiary to the contract. "270. In consideration for being trained and authorized to teach the TM technique, Knoles entered into a contract with Maharishi Mahesh Yogi and the organizations he founded or otherwise authorized. **One of those organizations is the Foundation.** See Exhibit C." [Dkt. N0. 83 at 50–51.] The Plaintiff also claims,

> 25. To promote the Transcendental Meditation technique, Maharishi Mahesh Yogi encouraged his early students to found organizations around the world, including the Maharishi Foundation USA, Inc., to teach and promote the Transcendental Meditation technique.

> 26. The Foundation and the Transcendental Meditation technique are still intimately associated with Maharishi Mahesh Yogi. The Foundation bears Maharishi Mahesh Yogi's name, and his name and likeness is displayed prominently on much of the Foundation's literature.

[Dkt. No. 83 at 5–6.] These factual allegations set forth sufficient facts to claim that the Plaintiff is an organization founded by the Maharishi and, arguably, a third-party beneficiary to the contract.

While the Court finds that the Plaintiff has pled sufficient facts to give rise to the third-party beneficiary claim, the breach of contract claim nevertheless fails as a matter of law.  This contract was executed in Spain, while Knoles was a permanent resident of

Australia, and this case has been brought in Iowa.  While the laws of these jurisdictions regarding the statute of limitations on written contracts vary greatly, the Court need not undergo such a choice of law analysis.  The longest of the statutes of limitations is that of the state of Iowa which allows for a claim to be brought within ten years of the date of the breach.  Diggan, 576 N.W.2d at 102.

> The Plaintiff's complaint alleges,
>
> 42. Knoles lived and taught the TM technique in Australia under or in association with the World Plan Executive Council of Australia, Ltd., an organization that promotes the teaching of the TM technique in Australia, until his departure from this organization in 1997.
>
> 43. Knoles remained in Australia after his disassociation with World Plan Executive Council of Australia, Ltd. for several years teaching meditation.
>
> 44. Knoles later expanded his teaching services to the United States and started training others in the United States how to teach his meditation technique. Those students of Knoles, thereafter, started teaching others how to teach Mr. Knoles' meditation technique.

[Dkt. No. 83 at 8–9].  Though modified, this is consistent with the first amended complaint which details Knoles departure from WPECA to begin teaching "Transcendental Meditation" independently in 1997. [Dkt. No. 52 at ¶¶ 57, 91–95.] Though the Plaintiff argues that the actual date of Knoles alleged breach could have occurred as late as 2003, [Dkt. No. 72-1 at 8], it is apparent from the Complaint that Knoles breached his contract in 1997 and began teaching outside the network of organizations contemplated by the 1972 contract.  Under the longest available statute of limitations, the Plaintiff's breach of contract claim must have been brought by some time in 2007.  The claim against Knoles was not filed until February 2013. [Dkt. No. 52.]

As such, the Plaintiff has failed to plead sufficient facts to give rise to a claim for breach of contract under Iowa law and the claim is, therefore, dismissed.

# IV. CONCLUSION

The Plaintiff relies on the same 10–15 factual allegations to bring a host of claims against the Defendants.  While some of these claims set forth sufficient factual allegations as to give rise to a plausible claim for relief and survive the Motion to Dismiss, the majority do not.  The Motion to Dismiss, [Dkt. Nos. 60, 61, 62, and 85], is granted in part and denied in part in accordance with the following:

**Count I** - Service Mark Infringement Under the Lanham Act - The Motion to Dismiss is **denied** with respect to Knoles pre-2005 conduct and **granted** with respect to the remaining service mark infringement claims.

**Count II** - False Advertising Under the Lanham Act - The Motion to Dismiss is **denied** with respect to the false advertising claims.

**Count III** - Unfair Competition Under the Lanham Act -  The Motion to Dismiss is **denied** with respect to Knoles pre-2005 conduct and **granted** with respect to the remaining unfair competition claims.

**Count IV** -  Unfair Competition and Passing Off - The Motion to Dismiss is **denied** with respect to Knoles pre-2005 conduct and **granted** with respect to the remaining unfair competition and passing off claims.

**Count V** - Service Mark Dilution Under the Lanham Act - The Motion to Dismiss with respect to these claims is **granted** and the dilution claims under the Lanham Act are **dismissed**.

**Count VI** - Contributory Service Mark Infringement Under the Lanham Act -  The Motion to Dismiss with respect to these claims is **granted** and the contributory service mark infringement claims are **dismissed**.

**Count VII** - Secondary Liability for False Advertising under the Lanham Act - The Motion to Dismiss is **denied** with respect to the contributory false advertising claims.

**Count VIII** -  Contributory Liability for Unfair Competition and Passing Off -  The Motion to Dismiss with respect to these claims is **granted** and the contributory liability for passing

45

off claims are **dismissed**.

**Count IX** - False Representation Under Iowa Law - The Motion to Dismiss with respect to these claims is **granted** and the false representation under Iowa law claims are **dismissed**.

**Count X** - Unfair Competition Under Iowa Law - The Motion to Dismiss is **denied** with respect to Knoles pre-2005 conduct and **granted** with respect to the remaining Iowa law unfair competition claims.

**Count XI** - Service Mark Infringement Under Iowa Code § 548.112 -  The Motion to Dismiss is **denied** with respect to Knoles pre-2005 conduct and **granted** with respect to the remaining service mark infringement claims.

**Count XII** - Service Mark Dilution Under Iowa Law - The Motion to Dismiss with respect to these claims is **granted** and the dilution claims under Iowa law are **dismissed**.

**Count XIII** - Unjust Enrichment Under Iowa Law - The Motion to Dismiss with respect to the unjust enrichment claims is **denied**.

**Count XIV** - Breach of Contract Under Iowa Law - The Motion to Dismiss with respect to these claims is **granted** and the breach of contract claims are **dismissed**.

        **IT IS SO ORDERED**.

        **DATED** this 19th day of November, 2013.

                        JOHN A. JARVEY
                        UNITED STATES DISTRICT JUDGE
                        SOUTHERN DISTRICT OF IOWA