**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DES MOINES DIVISION**

| | |
|---|---|
| **MAHARISHI FOUNDATION USA, INC.** )<br>)<br>**PLAINTIFF,** )<br>)<br>vs. )<br>)<br>**THE VEDA CENTER, LLC, THOMAS KNOLES,** )<br>**AND THE MEDITATION HOUSE, LLC** )<br>)<br>**DEFENDANTS,** )<br>)<br>)<br>**THOMAS KNOLES,** )<br>)<br>**COUNTERCLAIM PLAINTIFF,** )<br>vs. )<br>)<br>**MAHARISHI FOUNDATION USA, INC.,** )<br>)<br>**COUNTERCLAIM DEFENDANT.** )<br>) | No. 4:11-cv-562<br><br>**PLAINTIFF MAHARISHI FOUNDATION USA, INC.'S TRIAL BRIEF** |

**TABLE OF CONTENTS**

I.   Overview ............................................................................................................... 2
II.  Defendants' Actions make this an Exceptional Case to support an
     Attorney's Fee Award. .......................................................................................... 2
III. Elements of Claims ................................................................................................ 4
     A. False Advertising ............................................................................................. 4
        1. Literal Falsity .............................................................................................. 5
        2. Establishment claims analysis .................................................................... 6
        3. Defendants are required to, and have identified, the TM Scientific
           Studies as the specific tests relied upon in their advertising ..................... 7
     B. Secondary Liability for False Advertising ...................................................... 8
     C. Unjust Enrichment ............................................................................................ 9
IV.  Remedies .............................................................................................................. 10
     A. Injunctive Relief ............................................................................................. 10
     B. Disgorgement of Defendants' Profits ............................................................. 10
V.   Defenses Raised ................................................................................................... 12
     A. Unclean Hands ............................................................................................... 12
VI.  Knoles' Counterclaims ........................................................................................ 13

Plaintiff Maharishi Foundation USA, Inc. ("Foundation") hereby submits its Trial Brief.

## I. Overview

The claims remaining in this case include the Foundation's claim of false advertising against all Defendants (Count II), the Foundation's claim of secondary liability for false advertising against Defendants Thom Knoles and The Veda Center (Count VII), and the Foundation's claim of unjust enrichment against all Defendants (Count XIII). (Dkt. 207.) The Foundation seeks injunctive relief as well as monetary damages and disgorgement of Defendants' profits. The years of litigation to arrive where this case presently exists reveals it is an exceptional case for which the Court should also award attorney's fees once it determines that the Foundation is the prevailing party.

Defendant Knoles has asserted counterclaims seeking a declaration that certain statements are not false advertising (Count I), and asserting false advertising claims against the Foundation (Count II). (Dkt. 218.)

## II. Defendants' Actions make this an Exceptional Case to support an Attorney's Fee Award.

"The court in exceptional cases may award reasonable attorney fees to the prevailing party" in a false advertising case under the Lanham Act. § 1117(a). A prevailing party is one who receives a "judicially sanctioned change in the legal relationship of the parties." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 605 (2001). An injunction satisfies the prevailing party standard. *See TrafficSchool.com, Inc. v. Edriver Inc.,* 653 F.3d 820, 832 (9th Cir. 2011); *Audi AG v. D'Amato*, 469 F.3d 534, 550–51 (6th Cir. 2006) (plaintiff was entitled to attorney's fees when district court awarded injunction but not damages).

The Supreme Court recently made clear that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position

(considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014) (addressing the identical provision in the Copyright Act)[1]. A case may be found "'exceptional' based upon 'the governing law and the facts of the case,' irrespective of whether the losing party is culpable." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314-15 (3d Cir. 2014) (quoting *Octane Fitness*).

To determine whether this is an exceptional case, the Court will be required to consider "the totality of the circumstances" and assess whether "(1) 'there is an unusual discrepancy in the merits of the positions taken by the parties,' based on the non-prevailing party's position as either frivolous or objectively unreasonable; (2) the non-prevailing party 'has litigated the case in an "unreasonable manner,"'; or (3) there is otherwise 'the need in particular circumstances to advance considerations of compensation and deterrence.'" *Georgia-Pac. Consumer Products LP v. von Drehle Corp.*, 781 F.3d 710, 720-21 (4th Cir. 2015), as amended (Apr. 15, 2015) (quoting *Octane Fitness*); *Fair Wind Dailing*, 764 F.3d at 315.

The Defendants' pre-suit conduct as well as their behavior during pretrial and trial proceedings are considered in assessing whether they have litigated the case in an unreasonable manner. *See LendingTree, LLC v. Zillow, Inc.,* 54 F. Supp. 3d 444, 462-63 (W.D.N.C. 2014) (awarding fees where party failed to conduct proper pre-suit investigation and "litigated its case so as to string out" its position, forcing Defendant to incur costs and time to uncover what the Court ultimately found to be an unreasonable position); *see also Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 726 F.3d 1359, 1367 (Fed. Cir. 2013) (affirming district court's award of attorney's fees where party exhibited "an overall vexatious litigation strategy"), cert. denied, 134 S.Ct. 1546

---

[1] Courts have consistently applied the *Octane Fitness* standard to Lanham Act attorney's fees claims, noting that the Court cited to cases construing the identically worded attorney's fees provision). *See Georgia-Pac. Consumer Products LP v. von Drehle Corp., 781 F.3d 710, 720-21 (4th Cir. 2015), as amended (Apr. 15, 2015).*

3

(2014). The Court should also consider such factors as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S.Ct. at 1756 n.6.

The evidence will show that this is an exceptional case, aptly supporting an award of attorney's fees in favor of the Foundation, based both on the lack of substantive strength of the Defendants' position and the Defendants' vexatious litigation strategy. This case started as a simple effort to stop the Meditation House from referencing TM Scientific Studies in its advertising for Vedic Meditation. Knoles counseled, encouraged, and provided legal counsel for the Meditation House to resist the Foundation's pre-suit requests over the span of nearly a year, despite the fact that the Meditation House rarely offered the Vedic Meditation sessions it advertised and received less than $3,000 for doing so. Knoles then forced himself into the lawsuit as the champion and defender of all of Vedic Meditation only to abandon that assertion years later, now claiming to speak only for himself. Defendants' post-litigation trial tactics also forced the Foundation to incur hundreds of thousands of dollars in attorney's fees. As examples: Defendants engaged in extensive and far-reaching discovery and pleadings related to threatened counterclaims of trademark cancellation they never brought. Defendants sought and obtained Court orders for discovery the Defendants did not then pursue. Evidence of the Defendants' vexatious litigation tactics and unreasonable actions, both pre and post litigation, will aptly support a significant attorney's fee award in favor of the Foundation.

### III. Elements of Claims

#### A. False Advertising

The Foundation's false advertising claim against the Defendants include two types of advertisements made by the Defendants: (1) Defendants falsely advertise that the Vedic

4

Meditation they teach has been scientifically studied, which studies validate specific health benefits from practicing Vedic Meditation, including reduced stress, improved blood glucose and insulin levels, and normalization of blood pressure; and (2) Defendants advertise a false equivalency between Transcendental Meditation and Vedic Meditation.

The elements of a Lanham Act false advertising claim include:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;
> (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience;
> (3) the deception is material, in that it is likely to influence the purchasing decision;
> (4) the defendant caused its false statement to enter interstate commerce; and
> (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products.

*Buetow v. A.L.S. Enterprises, Inc.*, 650 F.3d 1178, 1182 (8th Cir. 2011) (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998)). Advertising is false under the Lanham Act if it is either (1) literally false, or (2) literally true or ambiguous but has the tendency to deceive consumers. *See Groupe SEB USA, Inc. v. Euro-Pro Operating LLC*, 774 F.3d 192, 198 (3d Cir. 2014). Plaintiff bears the burden of establishing these elements of its false advertising claims.

### 1. Literal Falsity

The Foundation claims that both groups of the Defendants' advertisements are literally false. "[T]he test for literal falsity is simple[]; if a defendant's claim is untrue, it must be deemed literally false." *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 943-45 (3d Cir. 1993). "The test for literal falsity is an objective one for the court's determination. If a defendant's claim is untrue, it must be deemed literally false regardless of the advertisement's impact on the buying public." *Schering-Plough Healthcare Products, Inc. v. Neutrogena Corp.*, 702 F. Supp. 2d 266, 271 (D.

Del. 2010). Thus, the Foundation need not present any evidence of consumer confusion for literally false advertisements under the second element of a false advertising claim.

"A 'literally false' message may be either explicit or 'conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated.'" *Groupe SEB USA, Inc.*, 774 F.3d at 198 (quoting *Novartis Consumer Health, Inc.*, 290 F.3d at 586-87); *see also Rhone-Poulenc*, 93 F.3d at 516 (concluding that, based on the "implicit message" conveyed, an advertisement showing two similar gasoline pumps with dramatically different prices, accompanied by the slogan "Which one would you choose," was a literally false representation that the two drugs listed in the ad could be indiscriminately substituted). The context of the entire advertisement must therefore be analyzed to determine whether the message conveyed by the Defendants necessarily implicates a false message even if it is not explicitly stated.

With respect to the Foundation's claims that Defendants advertise a false equivalency between TM and VM, the evidence will establish that the Defendants' advertisements of equivalency between TM and VM are literally false based on material differences between the services. With respect to the claims that Defendants falsely advertise their services have been scientifically studied, those claims involve a different analysis applicable to establishment claims.

### 2. Establishment claims analysis

There is a different analysis when advertisements claim that "tests prove" or establish an advertised fact. These are "establishment" claims—assertions that the advertised fact is supported by tests or data. *See Rhone-Poulenc Rorer Pharm., Inc. v. Marion Merrell Dow, Inc.*, 93 F.3d 511, 514 (8th Cir. 1996). In an establishment claim, the Defendants must first identify the tests relied upon to make the "tests prove" claim, *see BASF Corp. v. Old World Trading Co.*,

*Inc.*, 41 F.3d 1081, 1091 (7th Cir. 1994), and the Foundation must then establish that the test asserted to validate the claim made did not in fact validate it, *see C.B. Fleet Co., Inc. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 435-36 (4th Cir. 1997) (citing with approval *Rhone–Poulenc Rorer Pharms., Inc.*, 93 F.3d at 514–15).

The crux of the establishment claims are straight forward. The Defendants have stated in advertising (either directly or by necessary implication) that Vedic Meditation has been scientifically studied and that hundreds of studies, including peer reviewed studies, validate specific health benefits from practicing Vedic Meditation. The Foundation takes the position that these statements are literally false because, as the Defendants have admitted, no scientific studies have ever been conducted on the practice of Vedic Meditation. In their interrogatory answers and deposition testimony, Defendants made clear that the scientific studies to which they referred in their advertising are the hundreds of studies conducted on TM, including even the most recent peer reviewed studies conducted long after Thom Knoles ended his affiliation with any of the TM organizations.

### 3. Defendants are required to, and have identified, the TM Scientific Studies as the specific tests relied upon in their advertising.

The Defendants have asserted in the summary judgment proceedings, expert reports, and in their more recent filings that their claimed health benefits are supported by scientific studies conducted on a wide variety of meditation techniques. The Defendants should be limited to the studies they identified in their interrogatory responses and deposition testimony. That other studies on different forms of meditation exist that support general health benefits from the practice of other forms of meditation does not make Defendants' advertising truthful. "When an advertising claim of favorable fact either expressly or impliedly asserts that the fact is testor study-validated, the fact of the validation becomes an integral and critical part of the claim."

*C.B. Fleet Co., Inc. v. SmithKline Beecham Consumer Healthcare, L.P.,* 131 F.3d 430, 435-36 (4th Cir. 1997); *see also BASF Corp.,* 41 F.3d 1081, 1091 ("Since Old World did not perform the tests, its claim was literally false."). Studies showing general health benefits from practicing some form of meditation do not protect the Defendants from their false advertising, particularly with respect to those advertisements claiming the specific health benefits noted only in studies conducted on TM.

False advertising claims exist in the Lanham Act not only to protect competitors' commercial interests, but also to protect consumers. *See Porous Media Corp. v. Pall Corp.,* 110 F.3d 1329, 1336 n.8 (8th Cir. 1997) ("Section 43(a) was passed to protect consumers as well as competitors …. Congressional policy appears to encourage commercial firms to act as the fabled 'vicarious avenger' of consumer rights." (quoting 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27.04(3)(d), at 27–48 (3rd ed. 1996) (footnotes omitted)). Defendants have identified the studies they relied upon in making the advertisements, and they should not be allowed to dupe the consuming public by now claiming that different studies could have validated the claims they made in advertising.

### B.  Secondary Liability for False Advertising

Secondary, or contributory, liability is available under the false advertising prong of the Lanham Act. *See Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.,* 380 F.3d 126, 133 (2d Cir. 2004) (reinstating claim for contributory false advertising after holding that the lower court erred in dismissing the direct claim for false advertising); *Fare Deals Ltd. v. World Choice Travel.Com,* 180 F. Supp. 2d 678, 686–87 (D. Md. 2001) (stating that contributory liability "applies equally to both infringement provisions of the Lanham Act"). "Section 43(a) states that it extends to any person who knowingly causes a false representation to be used in

connection with goods and services in commerce." *Grant Airmass Corp. v. Gaymar Indus., Inc.*, 645 F. Supp. 1507, 1511–12 (S.D.N.Y. 1986).

The evidence will establish that Thom Knoles and the Veda Center encouraged and aided other teachers of Vedic Meditation to falsely advertise that the services provided by the non-party teachers had been scientifically studied and shown to provide specific health benefits, also relying on the TM Scientific Studies. The evidence will further establish that the false advertisements by the other VM teachers helped further Knoles' network of Vedic Meditation and brought additional consumers to Knoles' advanced VM courses and his VM teacher training courses.

### C.  Unjust Enrichment

"[U]njust enrichment is a broad principle with few limitations." *State, Dep't of Human Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 155 (Iowa 2001); *Helm Financial Corp. v. Iowa N. Railway Co.*, 214 F.Supp.2d 934, 992 (N.D. Iowa 2002). To recover on a claim of unjust enrichment, Plaintiff must show the following elements: "(1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *Webster Industries, Inc. v. Northwood Doors, Inc.*, 320 F.Supp.2d 821, 840 (N.D. Iowa 2004) (citing *Helm*, 214 F.Supp.2d at 991-92). "The benefit need not 'be conferred directly by the plaintiff[s],' instead, '[t]he critical inquiry is that the benefit received be at the expense of the plaintiff.'" *Brown v. Kerkhoff*, 279 F.R.D. 479, 489 (S.D. Iowa 2012) (quoting *State ex rel. Palmer*, 637 N.W.2d at 155).

The Foundation's unjust enrichment claim is premised on Defendants' actions of trading off the goodwill established by the Foundation by falsely advertising an equivalency between TM and VM, including by falsely advertising that VM will produce the same health effects as

9

those benefits scientifically attributed to TM. The Foundation has spent millions of dollars in advertising to build its brand, and the Defendants have sought to benefit from the resulting notoriety by falsely advertising an equivalency, all to the detriment of the Foundation and its brand.

### IV.  Remedies

#### A.  Injunctive Relief

The Lanham Act expressly authorizes courts to grant injunction relief to prevent false advertising under § 1125. *See* 15 U.S.C. § 1116. "[C]ases involving injunctive relief and those seeking monetary damages under the Lanham Act have different standards of proof. A plaintiff suing to enjoin conduct that violates the Lanham Act need not prove specific damage." *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1335 (8th Cir. 1997).

#### B.  Disgorgement of Defendants' Profits

The Lanham Act provides that when a violation of § 1125(a) is established, "the plaintiff shall be entitled, … subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a) (emphasis added). A Plaintiff need not prove actual damages to be entitled to recovery the Defendants' profits. *See Masters v.UHS of Delaware,* 631 F.3d 464, 475 (8th Cir. 2011) (affirming disgorgement of $2.4 million of Defendant's profits although Plaintiff suffered no actual damages). The Eighth Circuit explained that, separate from the Plaintiff's own damages, disgorgement of the Defendants' profits is appropriate "based upon 1) unjust enrichment, 2) damages, or 3) deterrence of a willful infringer." *Id.* at 471. "When a [plaintiff] cannot prove actual damages attributable to the [defendants'] misconduct (e.g., specific instances of lost sales), [a plaintiff's] recovery of an equitable share of the [defendants'] profits serves, *inter alia*, as a 'rough measure' of the likely harm that the [plaintiff] incurred because of the infringement,

while also preventing the infringer's unjust enrichment and deterring further infringement." *Venture Tape Corp. v. McGills Glass Warehouse*, 540 F.3d 56, 63 (1st Cir. 2008).

After Congress amended § 1117 in 1999, some courts have held that willfulness is no longer required before a court may order disgorgement of a defendant's profits. *See, e.g.*, *Wildlife Research Ctr., Inc. v. Robinson Outdoors, Inc.*, 409 F. Supp. 2d 1131, 1136 (D. Minn. 2005) (agreeing with "other circuit courts have held that [the amendment] removes any willfulness requirement for claims based on false or misleading advertising" (citing *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 174 (3d Cir. 2005); *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 348-49 (5th Cir. 2002)). While the Eighth Circuit has assumed, but not directly decided, that willfulness is a prerequisite to recovery a defendant's profits, *see Masters*, 631 F.3d at 471 n.2, willfulness will be established by the evidence presented in this case.

When a plaintiff seeks disgorgement of profits, the plaintiff must provide evidence only of the Defendants' sales. § 1117(a). The burden then shifts to the defendant to establish deductions from its gross revenues or that its gross revenues are attributed to something other than the wrongful conduct. *Id.* The United States Supreme Court has explained that the defendant "has the burden to isolate the profits which are attributable to the use of the infringing mark." *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 818 (D. Minn. 2011) (noting the same allocation applies to false advertisement disgorgement cases and quoting *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206–07 (1942)). It is a "well-established principle that profits may be presumed to be attributable to infringement unless the defendant proves otherwise." *Clearline Tech. Ltd. v. Cooper B-Line, Inc.*, 948 F.Supp.2d 691, 707-8 (S.D. Tex. 2013).

## V.     Defenses Raised

### A.  Unclean Hands

Defendant Knoles has raised "unclean hands" as a defense to the Foundation's claims. The unclean hands doctrine "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." *FLIR Sys., Inc. v. Sierra Media, Inc.,* 965 F. Supp. 2d 1184, 1193 (D. Or. 2013) (citing *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 833 (9th Cir. 2011)). Defendants must prove unclean hands by clear and convincing evidence. *Id.*

The "extent of the harm caused by the plaintiff's misconduct is a highly relevant consideration." *Id.* In the related field of copyright infringement, the Eighth Circuit "requires a 'nexus,' that is, a 'direct relationship,' between the misconduct and the merits of the controversy between the parties" before the unclean hands defense can preclude a plaintiff from protecting its copyright. *Int'l Motor Contest Ass'n, Inc. v. Staley*, 434 F. Supp. 2d 650, 670 (N.D. Iowa 2006) (discussing *Saxon v. Blann*, 968 F.2d 676 (8th Cir. 1992)). The *Saxon* Court made clear that the plaintiff's wrongdoing must be "of serious proportions." *Saxon*, 968 F.2d at 680.

Thus, Knoles must establish that the Foundation's alleged wrongdoing has a sufficient nexus to the false advertising dispute[2] between the parties and the Foundation's alleged wrongdoing is of such serious proportions that the Foundation should be precluded from protecting its goodwill by prevailing on its false advertising claims against Knoles.

> "Where the law invoked by the plaintiff is really for the protection of the public, unclean hands is not a defense. That is, if the evidence shows that plaintiff is engaging in inequitable practices, but defendant is also guilty of the unfair competition charged, an injunction should be granted notwithstanding the unclean hands maxim. It is better to remedy one wrong than to leave two wrongs at large."

---

[2] Knoles' assertion that his unclean hands defense is "not limited to Plaintiff's false advertising" (Dkt. 274 Knoles' Br. at 39 n.4) is therefore wrong as a matter of law. The enforceability of Knoles' contract is irrelevant to the false advertising claims at issue.

*FLIR,* 965 F. Supp. 2d at 1197-98 (quoting 6 McCarthy on Trademarks & Unfair Competition § 31:53 (4th ed. 2013)). The unclean hands defense does not preclude the Foundation's request for injunctive relief.

### VI.   Knoles' Counterclaims

Knoles has asserted two counterclaims: (1) Declaratory Judgment that his advertisements do not constitute false advertising (a mirror to the Foundation's false advertising claims), and (2) false advertising by the Foundation based on alleged statements made by the Foundation or others. Both claims require Knoles to prove (or disprove with respect to his Declaratory Judgment claim) the elements of a false advertising claim as defined above.

The second element of a false advertising claim applies a different analysis to literally false statements made in advertising as opposed to true or ambiguous, but allegedly deceptive, statements made in advertising. *Castrol Inc.*, 987 F.2d at 943-45. In determining whether a statement made in advertising is literally false, the Court must consider the entirety of the advertisement in its context. *United Indus. Corp. v. Clorox Co.,* 140 F.3d 1175, 1181 (8th Cir. 1998). Unless the alleged claim is unambiguous, it cannot be considered literally false. *Groupe SEB USA, Inc*, 774 F.3d at 198. "The greater the degree to which a message relies upon the viewer or consumer to integrate its components and draw the apparent conclusion the less likely it is that a finding of literal falsity will be supported." *Groupe SEB USA, Inc*, 774 F.3d at 198-99. Each of Knoles' claims of false advertising by the Foundation are literally true but allegedly deceptive.

In the absence of literal falsity, "an additional burden is placed upon [Knoles] to show that the advertisement, though explicitly true, nonetheless conveys a misleading message to the viewing public. … To satisfy its burden, [Knoles] must show how consumers have actually

reacted to the challenged advertisement rather than merely demonstrating how they could have reacted." *Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 33 (1st Cir. 2000) (citing *Sandoz Pharmaceuticals Corp. v. Richardson–Vicks, Inc.*, 902 F.2d 222, 228–29 (3d Cir. 1990)). "Generally, the preferred evidence of an advertisement's influence over purchasing decisions is actual consumer survey evidence. … The only exception to the burden to prove that an advertisement is misleading through consumer survey evidence is if the advertisement is 'literally false.'" *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 951 (3d Cir. 1993) (citing *Sandoz*, 902 F.2d at 228). To establish a false advertising claim involving deceptive (as opposed to literally false) advertising under the fifth element, Knoles must also show he has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from himself to the Foundation or by a loss of his goodwill. *See Buetow*, 650 F.3d at 1182.

The evidence will also be lacking on several other elements of a false advertising claim, on which Knoles carries the burden. The first element of a false advertising claim also requires the statement to be part of a commercial advertisement. To meet this element, the statement must be commercial speech disseminated in an advertisement or promotion to the relevant purchasing public, it must refer to a specific service, and it must be made by one with an economic motivation for the speech. *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1120-21 (8th Cir. 1999). The fourth element is related to the first element and requires proof that the statement has been made in interstate commerce. *Buetow*, 650 F.3d at 1182. Private communications between competitors are not commercial advertisements subject to the Lanham Act. *See ISI Int'l, Inc. v. Borden Ladner Gervais, LLP*, 316 F.3d 731, 733 (7th Cir. 2003) (holding that letter sent to the plaintiff's business partners, warning them (falsely) that they could be liable for patent infringement was not commercial advertising or promotion).

Knoles will be unable to present evidence of consumer deception, let alone consumer surveys, which will defeat Knoles' false advertising claims against the Foundation. Knoles' evidence also will be lacking to show materiality, dissemination, and injury for each of Knoles' claims of false advertising by the Foundation.

/s/ Mark L. Zaiger
MARK L. ZAIGER          AT0008655
JASON R. SYTSMA         AT0009728
DANA OXLEY              AT0005917
                for
SHUTTLEWORTH & INGERSOLL, P.L.C.
500 Firstar Bank Bldg., P.O. Box 2107
Cedar Rapids, IA 52406
PHONE:     (319) 365-9461
FAX:       (319) 365-8443
mlz@shuttleworthlaw.com
jrs@shuttleworthlaw.com
dlo@shuttleworthlaw.com

and

WILLIAM P. GOLDSTEIN
MAHARISHI FOUNDATION
1000 N. Fourth Street
Fairfield, IA 52557
PHONE:     (641) 472-1183
FAX:       (641) 472-1141
EMAIL:     bgoldstein@mum.edu

ATTORNEYS FOR PLAINTIFF MAHARISHI FOUNDATION USA, INC.

Copy to:

Todd A. Strother, Esq.
Timothy N. Lillwitz, Esq.
Bradshaw, Fowler, Proctor & Fairgrave, P.C.
801 Grand Avenue, Suite 3700
Des Moines, IA 50309

Eric M. Braun, Esq.
EMB Legal Pty. Ltd.
Level 34, 50 Bridge Street
Sydney, NSW, Australia

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of this document was served upon counsel of record for each party to the action in compliance with **FRCP 5** on **June 9, 2015**, by:

[X] Electronically via ECF for ECF registrants
[ ] U.S. Mail _____
[ ] Fax _____
[ ] Fed Ex _____
[ ] Hand Delivered _____
[ ] other ____**EMAIL**_____

**BY:  Paula Pohlpeter**